THE PRUDENTIAL INSURANCE CO. v. MAE IRENE PRESCOTT, *et al.*

156 So. 109
Division B.
Opinion Filed Dec. 8, 1933.
Opinion on Rehearing Filed June 26, 1934.

*Shutts & Bowen, Joseph F. McPherson* and *L. S. Bonsteel,* for Appellant;

*Blackwell, Donnell & Moore,* for Appellee.

BUFORD, J.—On the 18th day of September, 1931, Jerry Prescott made application to the Prudential Insurance Company, incorporated under the laws of the State of New Jersey, for life insurance and made written answers to questions propounded in such application. The application appears to have been dated October 5th, 1931. On October 5th, 1931, a policy was issued, pursuant to that application. The policy was dated October 5, 1931, and was delivered on the 10th day of October, 1931.

On May 29th, 1932, the insured died and on October 4th, 1932, the insurance company served a written notice upon appellee's denying liability under the policy and on the same date, October 4th, 1932, filed its bill of complaint seeking to cancel the policy.

The grounds for cancellation alleged were: That the applicant and person to whom the policy was issued had knowingly misrepresented material facts relating to the condition of his health in the answers contained in his applications to questions propounded by the insurance company's application blanks.

The facts about which the misrepresentations were alleged to have been made were material and if the answers to the questions concerning these facts were false to the extent alleged in the pleadings such misrepresentations constituted sufficient ground to warrant cancellation of the policy provided action was taken by the insurer within the period in which the policy was contestable.

The controlling question in this case is whether or not the insurer moved in time to avail itself of the privilege of canceling the policy for cause. The application contained the following clause:

"It is understood and agreed, however, that if at the time of signing this application the full first premium is paid, the insurance shall take effect from the date of this application, in accordance with the provisions of the policy hereby applied for, provided life proposed is in sound health on the date of this application and provided this application is approved and accepted at the Home Office of the Company in Newark, New Jersey, under the plan, for the premium paid and amount of insurance applied for."

The insurance policy contained the following clauses:

"PRELIMINARY PROVISION.—This policy shall not take effect if on the date hereof the Insured be not in sound health, but in such event the premium or premiums paid hereof, if any, shall be returned."

"MONTHLY PREMIUM.—Six and 96/100........................ Dollars, payable on the delivery of this policy and a like

amount payable as hereinafter provided on or before the fifth day of each month after the date hereof in every year during the continuance of this policy, until twenty full years' premiums shall have been paid, or until the prior death of the Insured."

"INCONTESTABILITY.—This policy shall be incontestable after one year from its date of issue, except for non-payment of premium but if the age of the Insured be misstated the amount or amounts payable under this policy shall be such as the premium would have purchased at the correct age."

It is contended by the appellant that the period of incontestability began one year after the date of the insurance policy and that any time prior to that date the insurer could contest the validity of the policy and that notice was given and suit instituted prior to the beginning of the period of incontestability and within the period in which the insurer by the terms of the policy could contest its validity.

It is the contention of the beneficiaries that the period of incontestability began to run one year after the application was made by the insured and that the application was made on September 18th, 1931, thereby causing the period of incontestability to begin to run from the 18th day of September, 1932. That as the suit was not filed until October 4, 1932, it could not be maintained because the policy had become incontestable on that date by its terms.

It is contended that the trial court agreed with the contention of the beneficiaries.

The parties to this contract were *sui juris* and, therefore, could make and enter into such contracts and agreements as they saw fit to concur in. There is no ambiguity in the contract.

· As noted above, the application provided that if at the time of signing the application the full first premium is paid the *insurance* shall take effect from the date of the application, in accordance with the provisions of the policy applied for, provided the life of the proposed insured is in sound health on the date of the application and provided the application is approved and accepted at the home office of the company in Newark, New Jersey, etc.

In other words, this provision of the application gave the insured protection pending the approval of the application and the issuing of a policy pursuant thereto.

· The above quoted clauses of the policy first provided that the policy should not take effect if on the date thereof the insured be not in sound health. Further in the policy it was provided that monthly premiums of $6.96 should be payable on delivery of the policy and a like amount should be payable on the 5th day of each month *after the date* of the policy in every year during the continuance of the policy until twenty full years premiums shall have been paid, or until the prior death of the insured. Then further it was provided that, "This policy shall be incontestable after one year from its date of issue," etc.

While under the terms of the company's agreement contained in the application the insured was protected pending the issuance of the policy, no policy was issued until the application was approved at the Home Office and there is no contention that application was approved prior to the 5th of October, 1931. The very language of the policy shows that the contract sought to be cancelled did not take effect until the date affixed to the policy. The second clause in the policy provides that it shall not take effect at all, if on the date thereof the insured should not be in sound health.

Again, the policy provides that a monthly premium should be paid upon delivery of the policy on the 5th day of each month after the date thereof in every year during the continuance of the policy, etc.

. The policy was dated the 5th day of October, 1931.

. Then the incontestability clause provides, "This policy shall be incontestable after one year from its date of issue." This was not equivalent to a contract that it should be incontestable after one year from date on which insurance under the terms of the application became effective.

In Mutual Life Insurance Co. of New York v. Hurni Packing Co., 68 Law. Ed. 235, 31 A. L. R. 102, the Supreme Court of the United States, speaking through Mr. Justice Sutherland, in construing an incontestability clause in a policy, which policy was applied for on September 2, 1915, and which was in fact executed on September 7, 1915, but antedated as of August 23, 1915, and delivered to the insured about September 13, 1915, said:

"Here the words referring to the written policy, are 'from its date of issue.' While the question, it must be conceded, is not certainly free from reasonable doubt, yet, having in mind the rule first above stated, that in such case the doubt must be resolved in the way most favorable to the insured, we conclude that the words refer not to the time of actual execution of the policy, or the time of its delivery, but to the date of issue as specified in the policy itself. Wood v. Brotherhood of American Yeoman, 148 Iowa 400, 403, 404, 126 N. W. 949; Anderson v. Mutual L. Ins. Co., 164 Cal. 712, 130 Pac. 726, Ann. Cas. 1914b 903; Harrington v. Mutual L. Ins. Co. 21 N. D. 447, 34 L. R. A. (N. S.) 373, 131 N. W. 246; Yesler v. Seattle, 1 Wash. 308, 322, 323, 25 Pac. 1014 It was competent for the parties to agree that the effective date of the policy should be one prior to

its actual execution or issue; and this, in our opinion, is what they did. Plainly their agreement was effective to govern the amount of the premiums and the time of their future payment, reducing the former and shortening the latter, and, in the absence of words evincing a contrary intent, we are unable to avoid the conclusion that it was likewise effective in respect of other provisions of the policy, including the one here in question. This conclusion is fortified by a consideration of the precise words employed, which are 'from *its* (that is, the policy's) date of issue'; or, in other words, from the date of issue as specified in the policy. It was within the power of the Insurance Company, if it meant otherwise, to say so in plain terms. Not having done so, it must accept the consequences resulting from the rule that the doubt for which its own lack of clearness was responsible must be resolved against it."

It will be seen that in that case the Supreme Court of the United States held that the language used in the policy "date of issue" would be construed to mean the date of issue as appearing in the policy, although it was conceded that that date was prior to the making of the application for the insurance, which application was made prior to the actual date on which the policy was executed. If the date upon which the policy purports to have been executed is controlling as to the incontestability clause, even though it is certain that that date was prior to and before any application was made for insurance, then it is hardly conceivable that any case could arise wherein it would not be controlling, unless certain and definite language was used in the policy to preclude such construction.

In Goodwin v. Provident Savings Life Assurance Association, 97 Iowa 226, 59 Am. St. 411, the Supreme Court of Iowa said:

"We have a case, then, for construction of these seemingly ambiguous and conflicting provisions. The tenets established for the guidance of courts in such matters are well understood, and no one is better established than that in all cases the policy must be liberally construed in favor of the assured, so as not to defeat, without a plain necessity, his claim for indemnity. And when the words used may, without violence, be given two interpretations, that which will sustain the claim and cover the loss should be adopted; Thompson v. Phenix Ins. Co. 136 U. S. 287; National Bank v. Insurance Co., 95 U. S. 673; Moulor v. American Life Ins. Co., 111 U. S. 335; Wadsworth v. Jewelers' etc. Co. 132 N. Y. 540; Fitch v. American, etc., Ins. Co., 59 N. Y. 557; 17 Am. Rep. 372; Garretson v. Equitable, etc., Assn., 74 Iowa 419; Meyer v. Fidelity, etc., Co. 96 Iowa 378; ante, p. 374; Collins v. Merchants, etc., Ins. Co., 95 Iowa 540; 58 Am. St. Rep. 438. Now, by the terms of the policy it was incontestable, after two years from its date, except for fraud in procuring it, subject, however, to the stipulations regarding payment of premiums, and extrahazardous occupations. That is to say, claims under the policy by reason of death of the assured were not to be controverted or disputed, except for some of the reasons stated, and death by suicide is not one of them. It will be observed that the clause on which the defendant relies is not found in the policy in suit, but in the application, which preceded it in point of time, and there is significance in the fact that the words used in the application were not carried forward into the policy. Another rule for interpretation may well be used here, which is that when there is a conflict between the provisions of the policy and the statements contained in the application, the former controls."

Following that rule, we reach the conclusion that if there

was any conflict between the language used in the application and that used in the policy the language used in the policy, being clear and unambiguous, would control.

In Prudential Insurance Co. of America v. Connallon 154 Atl. 729, the Court of Errors and Appeals of New Jersey said:

"The court below held that: 'The date of the policy does not necessarily determine its *date of issue.*" The incontestability clause as written by the complainant apparently recognizes a distinction, because it is not stated to run from the date of the policy but from the date the policy was issued. The insurer and the insured may agree that a policy shall issue, that is, become effective, as of an earlier or later date than the day it is signed by its officers. Here the complainant agreed that, upon payment of the first full premium, the insurance should take effect from a date earlier than the date given to the policy, namely, the date of the application, provided the application was accepted. The premium was paid, the risk was accepted, and the policy was delivered, and, to ascertain the true date of issue, the policy must be read with the application. Thus the complainant made the date of the application the point of time when the policy became effective, and that is the date from which the year began during which the policy was contestable.' With this conclusion as to the incontestability clause we cannot agree.

"It may be that under certain circumstances the date of a policy would not necessarily determine its date of issue. A policy might be dated and signed and not parted with by the company for a long time, raising a question in such a case as that whether the date and signing of the policy or the date of its subsequent delivery should be regarded as its date of issue. But surely a policy is not effectively is-

sued, is not legally sent forth, until it has been properly signed and executed by the proper officers of the company. In this case the signing and execution was done on August 6, 1928, and the policy was not delivered to the beneficiary until after it was signed and executed. There is no evidence that the insurer and the insured agreed that this policy 'should issue' (if that were possible) before the date it was signed by its officers."

. To the same effect was the opinion in Meridian Life Insurance Co. v. Milan, 172 Ky. 75, 188 S. W. 879.

The motion to dismiss, however, challenged the right of complainant to maintain the suit in equity and this ground of the motion must be considered by this Court because if the order of the Chancellor was correct it is immaterial upon what ground it was based. A like question has recently been presented and determined by this Court in the case of Ocean Accident & Guaranty Corporation, Ltd., v. John Tucker, in which opinion was filed on October 19, 1933, not year reported. In that case we said:

"As a general rule equity will not entertain a bill by an insurance company, *after loss,* to cancel the policy and enjoin the bringing of an action thereon, where the bill is founded upon charges of fraud in obtaining the policy which might be availed of by way of defense in an action at law. The Sailors v. Woelfle, 118 Tenn. 755, 102 S. W. Rep. 1109, 12 L. R. A. (N. S.) 881; Mechanic's Ins. Co. of Philadelphia v. C. A. Hoover Distilling Co. (97 C. C. A. 400, 8th Circuit), 173 Fed. 888, 32 L. R. A. (N. S.) 940; Bankers Reserve Life Co. v. Omberson, 123 Minn. 285, 143 N. W. Rep. 735, 48 L. R. A. (N. S.) 265. The reason for the rule is that the insurors by issuing the policy of insurance, have entered into a contract with the assured; which entitles the latter, after a loss under the policy has occurred, to seek

redress in a court of common law, and there submit for judicial determination, all issues of fact between the parties, pursuant to the constitutional right to have a jury trial on all such issues. Drobney v. Lukens Iron & Steel Co., 204 Fed. (C. C. A. 2nd Circuit) 11."

In the instant case the suit was brought invoking the aid of a court of equity after the death of the insured and if the policy was procured by fraud such fact could be established as a defense to liability under the terms of the policy.

For the reasons stated, the judgment is affirmed.

It is so ordered.

Affirmed.

Davis, C. J., and Whitfield, Ellis, and Terrell, J. J., concur.

Brown, J., not participating because of illness.

## On Rehearing

Per Curiam.—This case is before us after rehearing granted pursuant to opinion filed on December 7, 1933. The judgment was affirmed largely on authority of opinion and judgment of this Court in the case of Ocean Accident & Guaranty Corporation, Lmtd., v. Tucker, filed October 19, 1933, and reported in 150 Sou. Rep. 606.

On rehearing we have been impressed by a feature existing in the case which did not exist in the Tucker case, *supra*.

In the Tucker case, *supra*, suit had been filed on the policy while in this case no suit had been filed.

It appears that by the weight of authority, as well as what we conceive to be the better reason, a clause contained in an insurance policy declaring the same to be incontestable after a stated period of time has reference to contest in

court by some sort of litigation and not a mere protest against payment, or an offer to rescind or a notice to protest at interest that the insurer will insist upon some defense to the policy, 37 C. J. 540, 36 A. L. R. 1245. The incontestability clause in an insurance policy does not affect the statute of limitations within which a suit may be brought on the policy, but it is a contract by the parties which makes the insurance policy incontestable for any cause unless specified in the policy after a certain period. The stipulation has no reference to the statute of limitations but constitutes a waiver by the insurer of the right to invoke defenses against the payment of the policy after a certain period of time from the date of issuance has elapsed. Citizens Life Insurance Co. v. McClure, 139 Ky. 138, 127 S. W. Rep. 794, 27 L. R. A. (N. S.) 1026; Huxton v. State Mutual Insurance Co., 148 Tenn. 439, 31 L. R. A. 78; Ericson v. Commercial Travelers, 103 Kan. 831, 176 Pac. Rep. 989.

The incontestability clause simply means that the insurer contracts that if it should have any defense which might be interposed to the validity of the contract that it will interpose such objections to its validity either by affirmative or defensive action taken in court within the period named in the contract. Northwestern Mutual Life Insurance Co. v. Pickering, 293, Fed. 496; Jefferson Standard Life Insurance Co. v. McIntyre, 294 Fed. 886; Chun Ngit Ngan v. Prudential Insurance Co., 9 Fed. (2nd Ed.) 340; Powell v. Mutual Life Insurance Co., 313 Ind. 161, 144 N. E. Rep. 825, 36 L. R. A. 1239; New Life Insurance Co. v. McCarthy, 22 Fed. (2nd) 241; Brown v. Pacific Mutual Life Insurance Co., 62 Fed. (2nd) 711; Jefferson Standard Life Insurance Co. v. Keeton (C. C. A. 4th Ed.) 292 Fed. 53.

It appears in this case, however, that the insurer was guilty of inexcusable laches in that it waited until the last

day of the contestable period to deny liability, and then undertook to resort to a court of equity for relief based on its election to rescind the contract. Whether this was done purposely as a means of depriving the insured of her constitutional right to, a jury trial on certain issues of fact arising because of its denial of liability on the policy, or whether it was due merely to the insurer's neglect, the result is the same—namely, the insured will be deprived of her constitutional right to a jury trial because of the act of the insurer in withholding its notice of election to deny liability until the last day of the contestable period, whereas it plainly appears that it was in a position to have given notice of election to rescind at a much earlier date.

The holding of Ocean Accident & Guaranty Co., Ltd., v. Tucker, 112 Fla. 401, 150 Sou. Rep. 606, confirms the constitutional right of an insured after loss to have issues of fact arising under insurance policies tried by jury. And only when an insurance company has seasonably denied liability on its policy within the contestable period and the insured has with notice thereof delayed so long thereafter in bringing a suit at law on the policy that the insurance company is about to lose its right to contest the policy during the contestable period unless it affirmatively proceeds in equity, is an equity suit to avoid the policy *after loss* maintainable.

The opinion filed heretofore in this cause on December 7, 1933, is hereby modified and amended in the particulars covered by this opinion, and as so amended and modified, the opinion heretofore rendered is adhered to and the decree of the Chancellor again affirmed.

Affirmed on rehearing.

DAVIS, C. J., and WHITFIELD, ELLIS and TERRELL, J. J., concur.

BROWN and BUFORD, J. J., dissent.

BUFORD, J., dissenting.—I am unable to agree with the conclusions reached by a majority of the Court. If it be true, as stated in the majority opinion, that a clause contained in an insurance policy declaring the same to be incontestable after a stated period of time has reference to contest in court by some sort of litigation and not a mere protest against payment, or an offer to rescind or a notice to protest at interest that the insurer will insist upon some defense to the policy, then it must follow that if the beneficiary institutes no suit to enforce payment under the policy, the insurer must before the expiration of the period in which it may contest the policy institute proceeding to have its rights judicially determined. It appears to me that the insurer's only forum is in a court of chancery in a suit to cancel the policy. The suit was filed within the time allowed by the terms of the contract and, therefore, it can not be said that the insurer was guilty of laches.

It appears in this case that the bill of complaint which sought to challenge and to cancel the policy was filed after the death of the insured and before an action at law had been commenced by the beneficiary to enforce the payment of the policy and on the last day on which the insurer could begin to contest its liability under the provisions of the policy. Therefore, in this instance, the only way in which the insurer could obtain relief and could avoid liability under the terms of the policy was to file in a court of chancery a bill in equity to cancel the policy because of the alleged fraud.

For the reasons stated, I think the judgment heretofore entered by this Court should be overruled and set aside and the decree appealed from should be reversed.

BROWN, J., concurs.