THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, a corporation of New Jersey, v. MAE IRENE PRESCOTT, a widow.

176 So. 875.
Division B.
Opinion Filed November 6, 1937.

*Shutts & Bowen, Crate D. Bowen* and *L. S. Bonstell,* for Plaintiff in Error;

*Blackwell & Donnell* and *John L. Moore,* for Defendant in Error.

BROWN, J.—This is an action at law brought by the beneficiary to enforce the provisions of a life insurance policy issued to Jerry Prescott on October 5, 1931, by the Prudential Insurance Company. The insured died May 29, 1932, and thereafter on the fourth of October, 1932, the insurer filed a bill in chancery seeking to cancel the policy on the ground that the insured had knowingly misrepresented material facts relating to the condition of his health in the answers, contained in his application, to questions propounded by the insurance company and on the further ground that the insured was not in sound health on the date of the issuance of the policy. The policy contained the following provisions that are material to this case.

"Preliminary Provision.—This policy shall not take effect if on the date hereof the Insured be not in sound health,

but in such event the premium or premiums paid hereon, if any, shall be returned."

"Incontestability.—This policy shall be incontestable after one year from its date of issue, except for non-payment of premiums, but if the age of the insured be misstated the amount or amounts payable under this policy shall be such as the premum would have purchased at the correct age."

"Entire contract contained in this policy.—This policy contains and constitutes the entire Contract between the parties hereto, and all statements made by the insured shall in the absence of fraud be deemed representations and not warranties, and no statement made shall avoid the policy or be used as a defense to a claim thereunder unless it be contained in the application for the policy and unless a copy of such application be endorsed upon or attached to the policy when issued."

The bill of complaint was dismissed on motion and an appeal was had to this Court. See Prudential Ins. Co. v. Prescott, 115 Fla. 365, 156 So. 109. In an opinion written by Mr. Justice BUFORD and concurred in by the entire Court it was held that the bill in equity had been brought within the contestable period, but the judgment of the Chancellor was affirmed on the doctrine laid down in the case of Ocean Accident and Guarantee Corporation, Ltd., v. John Tucker, 112 Fla. 401, 150 So. 606, in which this Court held:

"As a general rule, equity will not entertain a bill by an insurance company, after loss, to cancel the policy and enjoin the bringing of an action thereon, where the bill is founded upon charges of fraud in obtaining the policy which might be availed of by way of defense in an action at law. The Sailors v. Woelfle, 118 Tenn. 755, 102 S. W. 1109, 12 L. R. A. (N. S.) 881; Mechanics Ins. Co. of Philadelphia v. C. A. Hoover Distilling Co. (8th Circuit) 173 F. 888,

97. C. C. A. 400, 32 L. R. A. (N. S.) 940; Bankers Reserve Life Co. v. Omberson, 123 Minn. 285, 143 N. W. 735, 48 L. R. A. (N. S.) 265. The reason for the rule is that the insurers, by issuing the policy of insurance, have entered into a contract with the assured, which entitled the latter, after a loss under the policy has occurred, to seek redress in a court of common law, and there submit the judicial determination all issues of fact between the parties, pursuant to the constitutional right to have a jury trial on all such issues. Drobney v. Lukens Iron and Steel Co. (C. C. A. 2nd Circuit) 204 F. 11."

In affirming the lower court, this Court held:

"In the instant case the suit was brought invoking the aid of a court of equity after the death of the insured, and, if the policy was procured by fraud, such fact could be established as a defense to liability under the terms of the policy."

On rehearing it was pointed out to this Court that a feature existed in this case that did not exist in the Tucker case, *supra,* as in the Tucker case, suit at law had been filed on the policy to enforce it, while in this case no suit had been filed. The Court then in a *per curiam* opinion in which Justices BUFORD and the writer dissented, reaffirmed the judgment of the Chancellor.

The Court held that:

"It appears by the weight of authority, as well as what we conceive to be the better reason, a clause contained in an insurance policy declaring the same to be incontestable after a stated period of time has reference to contest in court by some sort of litigation and not a mere protest against payment, or an offer to rescind or a notice of repudiation of the policy given by the insurer to a party at

interest that the insurer will insist upon some defense to the policy. 37 C. J. 540; A. L. R. 1245, note * * *"

"The incontestability clause simply means that the insurer contracts that if it should have any defense which might be interposed to the validity of the contract that it will interpose such objections to its validity either by affirmative or defensive action taken in court within the period named in the contract (citing authorities)."

"It appears in this case, however, that the insurer was guilty of inexcusable *laches* in that it waited until the last day of the contestable period to deny liability, and then undertook to resort to a court of equity for relief based on its election to rescind the contract.

"Whether this was done purposely as a means of depriving the insured of her constitutional right to a jury trial on certain issues of fact arising because of its denial of liability on the policy, or whether it was due merely to the insurer's neglect, the result is the same, namely, the insured will be deprived of her constitutional right to a jury trial because of the act of the insurer in withholding its notice of election to deny liability until the last day of the contestable period, whereas it plainly appears that it was in a position to have given notice of election to rescind at a much earlier date."

"The holding of the Ocean Accident and Guarantee Corp., Ltd., v. Tucker (Fla.) 150 So. 606, confirms the constitutional right of an insured after loss to have issues of fact arising under insurance policies tried by jury. And only when an insurance company has seasonably denied liability on its policy within the contestable period and the insured has with notice thereof delayed so long thereafter in bringing a suit at law on the policy that the insurance company is about to lose its right to contest the policy during the

contestable period unless it affirmatively proceeds in equity, is an equity suit to avoid the policy after loss maintainable."

The present action at law was instituted on April 19, 1933, more than eighteen months after the policy's date of issue, and long after the incontestable period had begun to run. The insurer filed amended pleas, one of which averred that the insured was not in sound health on the day of delivery and denied liability for that reason, and also averred that the policy had been contested within the contestable period by the aforesaid equity suit, etc. The next plea denied liability because certain material representations concerning the insured's health and medical history were fraudulently made in the application.

The beneficiary interposed a demurrer to these pleas on a number of grounds, among which were (1) That the policy is incontestable; (2) That the fraudulent misrepresentations in the application could not be pleaded, because the application was not attached to nor endorsed upon the policy when it was issued.

The Circuit Judge sustained the demurrer and no provisions for amending pleadings were made. The cause came on for trial without pleas and verdict was found in favor of the beneficiary and final judgment entered thereupon.

In the present case the insured died before the incontestable period had begun to run. We find by a review of the cases reported from other jurisdictions that where a life insurance policy provides that after a certain definite time it shall be incontestable, except for certain defenses, a majority of the courts hold that the death of the insured within this time does not put an end to the incontestable clause, or prevent its subsequently becoming operative for the benefit of the beneficiary. Great Southern L. Ins. Co. v. Russ,

14 Fed. (2) 27; Mutual Life Ins. Co. v. Conley, 55 Fed. (2) 421; Mutual Life Ins. Co. v. Hurni Packing Company, 263 U. S. 167; Jefferson Standard Life Ins. Co. v. McIntyre, 294 Fed. 886; Missouri State Life Ins. Co. v. Cranford (Ark 1923) 257 S. W. 66; Monahan v. Metropolitan Life Ins. Co. (Ill.) 119 N. E. 68; Ramsey v. Old Colony Life Ins. Co., 131 N. E. 108; Ebner v. Ohio State Life Ins. Co. (Indiana) 121 N. E. 315; Priest v. Kansas City Life Ins. Co. (Kan.) 237 Pac. 938; Becjar v. Illlinois Life Ins. Co. (Mich.) 198 N. W. 884; Repala v. John Hancock Mut. Life Ins. Co., 201 N. W. 465; Lavelle v. Metropolitan Life Ins. Co. (Md.) 238 S. W. 504; Yates v. New England Mut. Life Ins. Co. (Neb.) 220 N. W. 285; New York Life Ins. Co. v. Steinman (N. J.) 143 Atl. 529; Hardy v. Phoenix Mut. Life Ins. Co. (N. C.) 104 S. E. 166; Killian v. Metropolitan Life Ins. Co. (N. Y.) 166 N. E. 798; Hensen v. Metropolitan Life Ins. Co., 167 N. E. 462; Parton v. Metropolitan Life Ins. Co., 221 N. Y. Supp. 610; Sexton v. Equitable Life Assurance Soc., 224 N. Y. Supp. 63; Wolpin v. Prudential Ins. Co., 228 N. Y. Supp. 78; Feirman v. Feirman (Pa.) 124 Atl. 171; Humpston v. State Mut. Life Ins. Co. (Tenn.) 256 S. W. 438; American Natl. Ins. Co. v. Welsh (Tex. 1930) 22 S. W. (2nd) 1063; Tracy Loan and T. Co. v. Mutual Life Ins. Co. (1932) 7 Pac. (2nd) 279.

As pointed out by the New York Court, the courts, in reaching this conclusion, have adhered to the rule that in case of ambiguity, that construction of the policy will be adopted which is most favorable to the insured (Killian v. Metropolitan Life Ins. Co., *supra*).

Incontestability clauses in insurance policies are favored in the law and the courts are ever ready to construe them, if possible, in favor of the insured.

18

Policies of insurance are prepared by the insurance companies, and the insured has no voice in their preparation. Clauses of this kind are evidently inserted in insurance contracts by the insurer for the mutual advantage of both the insurer and the insured. It has been well said that such a provision is reasonable and proper because it gives the insured a guaranty against expensive litigation to defeat his policy after the lapse of the time specified, and at the same time gives the company a reasonable time and opportunity to ascertain whether the contract should remain in force. Such a contract is not against public policy as tending to put fraud on a par with honesty. On the contrary, the stipulation recognizes fraud and all other defenses, but provides a reasonable time in which they may be, but beyond which they cannot be, established. Therefore, it is in the nature of, and serves a similar purpose as, a statute of limitations, the wisdom of which has been universally recognized.

In the case of the Mutual Life Ins. Co. v. Hurni Packing Co., *supra,* Justice SUTHERLAND expressed the opinion of the court that, while the contract of insurance is with the insured, nevertheless it is for the use of the beneficiary, and there is no reason to say that the incontestability clause is not meant for his benefit as well as the benefit of the insured. The court further said that it is for the benefit of the insured during his lifetime, and upon his death immediately inures to the benefit of the beneficiary.

The uniform current of authority and the decisions of the Supreme Court of the United States seem to be based on good reasoning and are worthy of following. It is to the advantage and convenience of both the insured and the insurer that there should be uniformity in policies of in-

surance, both in form and in the interpretation of the language used in the policies.

This Court held in the case of Prudential Ins. Co. v. Prescott, 156 So. 109, 115 Fla. 365, text 374, citing from Ocean Accident and Guaranty Corp., Ltd., v. John Tycker (Fla.) 150 So. 606:

"As a general rule equity will not entertain a bill by an insurance company, after loss, to cancel and enjoin the bringing of an action thereon, where the bill is founded upon charges of fraud in obtaining the policy which might be availed of by way of defense in an action at law."

The Court further held on rehearing in that case that:

"It appears that by the weight of authority, as well as what we conceive to be the better reason, a clause contained in an insurance policy declaring the same to be incontestable after a stated period of time has reference to a contest in court by some sort of litigation and not a mere protest against payment, or an offer to rescind or a notice of repudiation of the policy given by the insurer to a party at interest that the insured will insist upon some defense to the policy * * *"

"The incontestability clause simply means that the insurer contracts that if it should have any defense which might be interposed to the validity of the contract that it will interpose such objections to its validity either by affirmative or defensive action taken in court within the period named in the contract." (Citing authority.)

"It appears in this case, however, that the insurer was guilty of inexcusable *laches* in that it waited until the last day of the contestable period to deny liability, and then undertook to resort to a court of equity for relief based on its election to rescind the contract * * *"

"The holding in the Ocean Accident and Guaranty Co.,

Ltd., v. Tucker, 112 Fla. 401, 150 South. Rep. 605, confirms the constitutional right of an insured after loss to have issues of fact arising under insurance policies tried by jury. And only when an insurance company has reasonably denied liability on its policy within the contestable period and the insurer has with notice thereof delayed so long thereafter in bringing a suit at law on the policy that the insurance company is about to lose its right to contest the policy during the contestable period unless it affirmatively proceeds in equity, is an equity suit after loss maintainable."

The question then before this Court is whether the equity suit to cancel the policy on the grounds of fraud and unsound health brought within the contestable period, but dismissed upon defendant's motion, without a decision on the merits, is a contest within the meaning of the incontestability clause; and if so, is this contest avaliable to the insurer in an action at law on the policy instituted by one of the defendants in the equity suit long after the expiration of the contestable period?

By the plain words of the policy the insurer was given one year in which to "contest" the policy. They brought their action in equity within this contestable period and alleged the fraud, and the fact that insured was not in good health when the policy was issued. Was not this "an objection to the validity of the policy by affirmative action taken in court within the period named in the policy?"

Equitable relief was denied to the insurer largely because by granting this relief and submitting the questions of fraud to the chancellor, the beneficiary would have been denied the right of a jury trial on these issues after a loss had occurred. This Court also stated that by waiting until the last day of the contestable period the insurer was guilty of

inexcusable *laches* and had placed himself in such a position that equity would not grant relief. This may be true, but we can see no reason why this action was not a "contest" within the contestable period, according to the meaning and interpretation of the policy. This equity suit had the effect of making the grounds for rescission, as set out in the bill, available as defenses to the law action brought by the beneficiary to enforce the policy.

"Once having initiated a contest by judicial proceedings within the contestable period, the effect of such contest was, unless thereafter waived, to give the company the benefit thereof in the future in that or other actions, upon all and only such grounds as were set forth in such contest. It is not necessary that the company be successful in that particular action if the reason for such lack of success be other than a determination of the merits thereof." New York Life Ins. Co. v. Hurt, 35 Fed. (2d) 92, text 96.

"So where the insurer has filed its bill to cancel after the death of the insured, and the beneficiary later, within or after the two-year period files his suit at law on the policy, the insurer has preserved its rights under the clause." Powell v. Mutual Life Ins. Co. of N. Y., 144 N. E. 825, text 829.

"Insurer, by bringing its action in equity, has postponed indefinitely the period of contestability, which advantage is well worth the effort of commencing the suit and sufficient reward for vigilance without adding to it the unfair advantage of depriving the beneficiary of his right to a jury trial." Mutual Life Ins. Co. v. Marzec, 262 N. Y. S. 558.

We therefore hold that the lower court erred in *sustaining* the demurrer to the first plea.

Our Court has held that it is necessary that the insurer either contest the policy by an action to rescind and cancel

the contract or defraud the beneficiaries' suit to enforce the policy within the contestable period, else there is no "contest" within the meaning of an incontestability clause. The Prudential Life Insurance Company brought its appropriate equity action on the last day of the contestable period. If they had not brought their action, then the policy would have become incontestable. They could wait no longer for the insured's beneficiary to bring an action at law: *Laches* could not run against the insurance company as long as they instituted suit within the period allowed them in the policy. It seems to us that it would be an injustice to the insurance company to deny them an opportunity to set up their claim of fraud, etc., within the contestable period either defensively in an action at law or affirmatively in an equity action.

" 'Contest' is action taken in a tribunal having the right to determine the policy's validity." Rose v. Mut. L. Ins. Co., *supra*.

" 'Contest' under clause in life insurance policy that policy is incontestable, except for non-payment of premiums, after two years, is contest initiated by *appropriate proceedings* in court within time limited." Philadelphia L. Ins. Co. v. Burgess, 18 F. (ed) 599, 603.

It is quite a problem to determine how in all cases the insured is to be given a jury trial after loss and at the same time to hold that a contest must be begun in court within the contestable period or the insurer will lose his right to contest the policy; because if the insured's beneficiary chooses to wait until the policy becomes incontestable, then the only thing that the insurer could do would be to come into equity, and this would be depriving insured of jury trial unless the suit was stayed by the chancellor to permit an action at law. The Minnesota and Arkansas courts

have solved the problem by holding that the rights of the parties become fixed upon the death of the insured and that at any time thereafter the insurer can defend an action to enforce the policy. This gives the insured a right to a jury trial after loss and at the same time doesn't deny insurer his right to contest the policy. As hereinabove pointed out, however, this holding is against the weight of authority.

We adhere to our view, hereinabove expressed, that the action of the insurer in filing its bill in equity to rescind and cancel the policy was a *bona fide* attempt to contest the validity of the policy within the contestable period by the only method left open to them.

We come now to consider the second question involved. The insurance policy sued on contained the following clause:

"Entire Contract Contained in This Policy.—This policy contains and constitutes the entire contract between the parties hereto, and all statements made by the insured shall in the absence of fraud be deemed representations and not warranties, and *no statement shall avoid the Policy or be used as a defense to a claim thereunder unless* it be contained in the application for the policy and unless a copy of such application be endorsed upon or attached to the policy when issued." (Italics supplied.)

The application was not attached to or endorsed upon the policy when issued. The question then arises:

Is a plea setting up fraudulent misrepresentations in the application for the policy subject to demurrer on the grounds that the plea violates and seeks to vary the terms of a written instrument and on the grounds that fraud cannot be pleaded by reason of the fact that the application for insurance was not attached to the policy issued?

The lower court answered this question in the affirmative, and correctly sustained the demurrer to this plea.

The above clause was injected into the policy as an inducement to the insured. Many states require the application to be attached to the policy if the insurance company expects to rely on any of the answers contained therein. This makes it possible for the insured to have a copy of the entire agreement. It serves to guard the insured against misunderstanding as to his contract and, in case of controversy with the company to protect him against surprise, inconvenience and danger of injustice liable to arise where the policy does not contain the entire agreement and refers for parts of it to applications and other papers in possession of the insurance company.

Here the policy definitely declares that it constitutes the entire agreement between the parties. Had the Insurance Company desired to rely on any of the answers in the application they could have attached a copy to the insurance policy, but by not attaching such a copy, they apparently did not choose to rely on these answers and thus waived their right to set up answers in the application as a defense to the policy.

Appellant contends that it is against public policy not to allow the insurance company to show that they were induced into the contract by fraud. We feel that the insurance company, by not attaching a copy of the application indicated that it did not desire to rely on the answers in the application to avoid the policy and that they only relied upon the provisions in the policy, which policy contained the entire contract.

"The liberty of contract, being one of those rights secured by our Constitution, is not to be restrained upon any insufficient or mere fanciful conceit of what may possibly happen. The citizen who is *sui juris* has a right to make a contract beneficial to himself when neither immoral, fraud-

ulent nor illegal, and he should not be restrained in the exercise of such right unless the public welfare clearly compels it."

"It is manifest from many decisions that judicial tribunals hold themselves bound to the observance of rules of extreme caution when invoked to declare a transaction void on the grounds of public policy; and prejudice to the public interest must clearly appear before a court would be warranted in pronouncing the transaction void on this account." A. C. L. R. R. Co. v. Beazley, 54 Fla. 311, 351, 391, 45 So. 761.

This Court also held in the case of Cary and Co. v. Hyer, 107 So. 684, 91 Fla. 322, that, within limitations of public policy as long as the law is not violated, parties *sui juris* may make their own contracts and fully effectuate their purpose and intentions.

By the plain, unequivocal words of the policy the insurance company bound itself to rely only on the policy as the entire contract. By not attaching the application, the insurance company waived its right to put up a defense based on answers made by the insured in the application.

We hold therefore that the trial court was free from error in sustaining the demurrer to the second plea.

Because of the error above pointed out in sustaining the demurrer to the first plea, the judgment of the court below must be reversed.

Reversed and remanded.

WHITFIELD, P. J., and CHAPMAN, J., concur.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.