SARAH WINER, a widow, v. NEW YORK LIFE INSURANCE COMPANY

190 So. 894

Order Entered March 8, 1938
Opinion on Rehearing Filed September 12, 1939

*Rosenhouse & Rosenhouse,* for Appellant;
*Shutts & Bowen* and *E. S. Quick,* for Appellee.

## ON PETITION FOR REHEARING

PER CURIAM.—In this case, the Court, *ex mero motu,* recalled its mandate in order that it might reconsider its former opinion and decision, that it might, if it should see fit, grant a rehearing. A petition for rehearing had been filed, but it reached this Court after the fifteen-day period had elapsed.

Upon reconsideration of the case, the Court has decided to allow a rehearing on briefs, without oral argument, upon the following questions:

"1. Did the bill of complaint contain equity?

"2. Was this Court correct in holding in its opinion that: 'The facts constituting false and untrue representations made to the plaintiff in the application for reinstatement of the policy in question are not affected by the incontestable clause contained or expressed in the policy.' "

As the appellee asked for the rehearing, appellee is al-

lowed fifteen days in which to file brief in support of its contentions in regard to the foregoing questions, copy of such brief to be promptly served on counsel for appellant, and counsel for appellant is allowed a like time in which to file a reply brief, copy of which is to be served upon counsel for appellee.

It is so ordered.

ELLIS, C. J., and WHITFIELD, TERRELL, BROWN and CHAPMAN, J. J., concur.

BUFORD, J., dissents.

## ON REHEARING

BROWN, J.—In our original opinion and decision in this case, handed down on November 19, 1937, (130 Fla. 115, 177 So. 224) we held that the bill was without equity and that the chancellor should have granted the motion to dismiss the bill, and our order was that the order of the lower court be reversed with directions to dismiss the bill of complaint. Petition for rehearing was filed, and a rehearing granted on March 8, 1938. In the order granting the petition, the court, among other things, stated:

"Upon reconsideration of the case, the Court has decided to allow a rehearing on briefs, without oral argument, upon the following questions:

"1. Did the bill of complaint contain equity?

"2. Was this Court correct in holding in its opinion that:

"The facts constituting false and untrue representations made to the plaintiff in the application for reinstatement of the policy in question are not affected by the incontestable clause contained or expressed in the policy."

After this order was entered, the file was returned to the clerk's office to await the coming in of the briefs, which were filed in due course by counsel for the respective

parties, but by reason of fortuitous circumstances not material here, the file in the case was not again brought to the court's attention until a few weeks previous to the writing of this opinion, when the same was assigned by the Chief Justice to the writer to prepare an opinion on the questions presented for the consideration of the court upon this rehearing. Despite this long delay, which the court regrets, the questions presented are important, and the parties litigant are entitled to a careful reconsideration of the same, as heretofore ordered.

The appellee, New York Life Insurance Company, filed its bill against the appellant, praying the cancellation of a certain policy of life insurance, in which the appellant Mrs. Sarah Winer, was made the beneficiary, upon the ground that the reinstatement of said policy had been procured by fraud. The policy contained a clause to the effect that it would be incontestable after two years from date of issue, except for nonpayment of premiums.

In this case it appears from the bill that the policy, which was issued November 4, 1931, lapsed for non-payment of premiums on July 26, 1933; that on October 2, 1933, the insured made written application for the reinstatement of said policy upon certain representations, which application was granted; that thereafter insured died June 24, 1935; that the plaintiff Life Insurance Company did not learn of the alleged fraud in the procurement of the reinstatement of the policy until July 3, 1935; that promptly thereafter plaintiff, on July 26, 1935, notified the defendant beneficiary of its election to rescind the reinstatement of the policy; that the contestable period (if construed as being two years from date of reinstatement) would have expired October 2, 1935; that the bill of complaint to rescind the reinstatement of the policy and to have same canceled and surrendered was filed September 19, 1935, some twenty

days before the expiration of the alleged contestable period; that the insurer in its bill offered to return all premiums paid in connection with such reinstatement, and those paid thereafter; and the bill also alleged that the defendant, despite her knowledge that plaintiff would contest the policy, had failed to take any action, and that if the plaintiff had not filed its bill within the said contestable period, it would have been entirely deprived of its right to contest the validity of the reinstated policy. It thus appears that the issue of the validity of the reinstatement of the policy was raised in an equitable proceeding due to the failure of the defendant to sue at law on the policy within a reasonable time after she was advised of the insurer's intention to contest its validity and that defendant had had ample time within which to institute an action at law before the plaintiff filed its bill in equity.

Upon reconsideration of this case on this rehearing, we are now of the opinion that the complainant in the court below did not have any *complete* and *adequate* remedy at law at the time the bill was filed, and that there was, therefore, equity in the bill, for the reasons hereinafter set forth.

In the case of Prudential Ins. Co. of America v. Prescott, 130 Fla. 11, 176 So. 875, handed down by this Court on November 6, 1937, it was said:

"It is quite a problem to determine how in all cases the insured is to be given a jury trial after loss, and at the same time to hold that a contest must be begun in court within the contestable period or the insurer will lose his rights to contest the policy; because if the insured's beneficiary chooses to wait until the policy becomes incontestable, then the only thing that the insurer could do would be to come into equity, and this would be depriving the insured of jury trial unless the suit was stayed by the chancellor to permit an action at law. The Minnesota and Ar-

kansas courts have solved the problem by holding that the rights of the parties become fixed upon the death of the insured and that at any time thereafter the insurer can defend an action to enforce the policy. This gives the insured a right to a jury trial after loss and at the same time doesn't deny insurer his right to contest the policy. As hereinabove pointed out, however, this holding is against the weight of authority."

In our original opinion and decision in the instant case, and also in the Prescott case just referred to, we overlooked a then recent and well considered opinion by the Supreme Court of the United States in the case of American Life Ins. Co. v. Stewart, 300 U. S. 203, 81 L. Ed., 605, which was handed down February 1, 1937. In that case the insurer filed two bills in equity for the cancellation of two policies of life insurance issued on February 23, 1932, each policy naming a different beneficiary, on the ground that the insured, in his applications, had made fraudulent misstatements as to his health and other matters material to the risk. Each policy contained a two-year incontestable clause. The insured died May 31, 1932. The suits were filed on September 3, 1932. Motions to dismiss for want of equity were filed. On October 11, 1932, the beneficiaries brought actions at law on the policies. There was a stipulation between the parties that the suits in equity should be tried before the law actions. Upon the trial of the equity suits, the District Court decreed the cancellation of the policies. This decree was reversed by the Court of Appeals on the ground that the insurer had an adequate remedy at law. On certiorari to the Supreme Court of the United States, the Court of Appeals was reversed. In the very logical and trenchant opinion of Mr. Justice Cardozo in that case, it was said:

"No doubt it is the rule, and one recently applied in

decisions of this Court, that fraud in the procurement of insurance is provable as a defense in an action at law upon the policy, resort to equity being unnecessary to render that defense available. Enelow. v. New York L. Ins. Co., 293 U. S. 379, 385, 79 L. Ed. 440, 444, 55 S. Ct. 310; Adamos v. New York L. Ins. Co., 293 U. S. 386, 79 L. Ed. 444, 55 S. Ct. 315; Phoenix Mut. L. Ins. Co. v. Bailey, 13 Wall. 616 20 L. Ed. 501; Cable v. United States L. Ins. Co., 191 U. S. 288, 306, 48 L. Ed., 188, 193, 24 S. Ct. 74. That being so, an insurer, though the victim of a fraud, may commonly stand aside and await the hour of attack. But this attitude of aloofness may at times be fraught with peril. If the policy is to become incontestable soon after the death of the insured, the insurer becomes helpless if he must wait for a move by some one else, who may prefer to remain motionless till the time for contest has gone by. A "contest" within the purview of such a contract has generally been held to mean a present contest in a court, not a notice of repudiation or a contest to be waged thereafter. See, e. g., Killian v. Metropolitan L. Ins. Co., 251 N. Y. 44, 48, 166 N. E. 798, 64 A. L. R. 956; New York L. Ins. Co. v. Hurt (C. C. A. 8th) 35 F. (2d) 92, 95; Harnisch-feger Sales Corp. v. National L. Ins. Co. (C. C. A. 7th) 72 F. (2d) 921, 922. Accordingly an insurer, who might otherwise be condemned to loss through the mere inaction of an adversary, may assume the offensive by going into equity and there praying cancellation. This exception to the general rule has been allowed by the lower Federal courts with impressive uniformity. It has had acceptance in the state courts. It was recognized only recently in an opinion of this court, though the facts were not such as to call for its allowance. Enelow v. New York L. Ins. Co., *supra.*, (293 U. S. p. 384, 79 L. Ed., 443, 55 S. Ct. 310).

"The argument is made, however, that the insurer, even if privileged to sue in equity, should not have gone there quite so quickly. Six months and ten days had gone by since the policies were issued. There would be nearly a year and a half more before the bar would become absolute. But how long was the insurer to wait before assuming the offensive, and how was it to know where the beneficiaries would be if it omitted to strike swiftly? Often a family breaks up and changes its abode after the going of its head. The like might happen to this family. To say that the insurer shall keep watch of the coming and going of the survivors is to charge it with a heavy burden. The task would be hard enought if beneficiaries were always honest. The possibility of bad faith, perhaps concealed and hardly provable, accentuates the difficulty. * * * 'Where equity can give relief plaintiff ought not to be compelled to speculate upon the chance of his obtaining relief at law.' Davis v. Wakelee, 156 U. S. 680, 688, 39 L. Ed. 578, 584, 15 S. Ct. 555. To this must be added the danger that witnesses may disappear and evidence be lost. A remedy at law does not exclude one in equity unless it is equally prompt and certain and other ways efficient. Boyce v. Grundy, 3 Pet. 210, 7 L. Ed. 655; Drexel v. Berney, 122 U. S. 241, 30 L. Ed. 1219, 7 S. Ct. 1200; Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 43 L. Ed., 341, 19 S. Ct. 77; Union P. R. Co. v. Weld County, 247 U. S. 282, 287, 62 L. Ed. 1110, 1116, 38 S. Ct. 510. 'It must be a remedy which may be resorted to without impediment created otherwise than by the act of the party.' Cable v. United States L. Ins. Co., *supra* (191 U. S. p. 303, 48 L. Ed. 192, 24 So. Ct. 74). Here the insurer had no remedy at law at all except at the pleasure of an adversary. There was neither equality in efficiency nor equality in certainty nor equality in promptness. 'The remedy at law cannot be

adequate if its adequacy depends upon the will of the opposing party.' Bank of Kentucky v. Stone (C. C.) 88 F. 383, 391; cf. Lincoln Nat. L. Ins. Co. v. Hammer (C. C. A. 8th) 41 F. (2d) 12, 16. To make a contract incontestable after the lapse of a brief time is to confer upon its holder extraordinary privileges. We must be on our guard against turning them into weapons of oppression.

"The argument is made that the suits in equity should have been dismissed when it appeared upon the trial that after the filing of the bills, and in October, 1932, the beneficiaries of the policies had sued on them at law. But the settled rule is that equitable jurisdiction existing at the filing of a bill is not destroyed because an adequate legal remedy may have become available thereafter. Dawson v. Kentucky Distilleries & Warehouse Co., 255 U. S. 288, 296, 65 L. Ed. 638, 646, 41 S. Ct. 272; Lincoln Nat. L. Ins. Co. v. Hammer, *supra;* New York L. Ins. Co. v. Seymour (C. C. A. 6th) 45 F. (2d) 47, 73 A. L. R. 1523, *supra.* There is indeed, a possibility that the bringing of actions at law might have been used by the respondents to their advantage if they had not chosen by a stipulation to throw the possibility away. A court has control over its own docket. Landis v. North American Co., December 7, 1936, 299 U. S. 248, ante, 153, 57 S. Ct. 163. In the exercise of a sound discretion it may hold one lawsuit in abeyance to abide the outcome of another, especially where the parties and the issues are the same. *Ibid.* If request had been made by the respondents to suspend the suits in equity till the other causes were disposed of, the District Court could have considered whether justice would not be done by pursuing such a course, the remedy in equity being exceptional and the outcome of necessity. Cf. Harnischfeger Sales Corp. v. National L. Ins. Co. (C. C. A. 7th) 72 F. (2d) 921, 922, 923. There would be many circumstances

to be weighed, as, for instance, the condition of the court calendar, whether the insurer had been precipitate or its adversaries dilatory, as well as other factors. In the end, benefit and hardship would have to be set off, the one against the other and a balance ascertained. Landis· v. North American Co. *supra*. But respondents, as already indicated, gave that possibility away. They stipulated that the issues in equity should be tried in advance of those at law, and that only such issues, if any, as were left, should be disposed of later on. The cases were allowed to stand as if challenge to the suits had been made by a demurrer only. So challenged, they prevail.

"The decree should be reversed, and the cause remanded to the Court of Appeals for a consideration of the merits and for other proceedings in accord with this opinion."

It appears from our own decisions that we have frequently recognized the jurisdiction of equity to decree the rescission and cancellation of contracts procured by fraudulent representations where it was necessary to do so in order to prevent such contracts or other instruments from being vexatiously or injuriously used at some future time against the party seeking cancellation, when the testimony or evidence to impeach them may be lost. Only a court of equity can cancel and require the surrender of a written contract, when shown to have been fraudulently procured, or otherwise subject to rescission and cancellation. See Willis v. Fowler, *et al.*, 102 Fla. 35, 136 So. 358, and Florida cases therein cited. See also in this connection Merrill v. Ehrman, 116 Ala. 278, 22 So. 514, and Pepple v. Rogers, 104 Fla. 462, 140 So. 205.

In this case the policy provided that it should be incontestable after two years from its date of issue, except for non-payment of premium. The policy lapsed for non-payment of premiums within the two-year period, and the in-

sured procured its reinstatement by the Company. Within two years after such reinstatement, but more than three years after the policy was originally issued, the insured died.

The following questions arise: What effect did the reinstatement of the policy have upon the incontestability clause? Did that clause begin to operate anew from the date of the reinstatement, thus allowing the insurance company to contest the validity of the policy or of the reinstatement thereof within two years after its reinstatement; or did such clause cease to operate two years after the date of the original *issuance* of the policy, thus inhibiting the company from contesting the validity of the reinstated policy here involved? And further, if the company was thus precluded, after two years from date of issuance, from contesting the validity of *the policy* as originally issued, was it also precluded, by said clause in the lapsed policy, from contesting, within two years from reinstatement, the validity, not of the policy *per se*, but of *the reinstatement* of the policy, on the ground that such reinstatement was fraudulently procured?

This question was answered in our original opinion in the case by the last paragraph of the opinion in these words:

"The facts constituting false and untrue representations made to the plaintiff in the application for reinstatement of the policy in question are not affected by the incontestable clause contained or expressed in the policy."

And earlier in the opinion it was said:

"The question for decision here is the forum for the settlement of the issues tendered, whether in law or equity. If as alleged in the bill of complaint fraud was perpetrated by the defendant in his application for reinstatement of the policy, certainly it is entitled to its day in court and

before the proper tribunal that the issues made may be settled and determined according to law."

This language indicates that this court took the view that the incontestable clause of the policy cannot, by lapse of time, bar the plaintiff's right to contest, for fraud in its procurement, the validity of *the reinstatement* of the policy after lapse for non-payment of premiums. Counsel for the Insurance Company did not contend for such a construction, but assumed that such clause did apply and that the only question was as to the date from which the contestable period should be computed. Two cases were cited, however, in which the court stated that the incontestable clause was not applicable to fraud in the reinstatement of a policy. One of them was Acacia Mutual Life Association v. Kaul (N. J. Chancery) 169 Atl. 36. This decision cites as authority for its holding the case of Alper v. New York Life Ins. Co. (D. C.) 41 Fed. (2d) 956. While the language of the court in Alper case is broad enough to justify the construction given to it by the New Jersey Court, there is nothing in the opinion to show that the contest by the insurer was not made within the contestable period as measured from the date of reinstatement of the policy. The majority of the cases appear to have either directly held or to have assumed that, as to fraud in the procurement of the reinstatement, the contestable period begins to run anew as of the date of reinstatement. The theory upon which the majority of the courts so hold is very well stated by the Supreme Court of Mississippi, in the case of New York Life Insurance Company v. Burris, 165 So. 116, wherein the authorities are reviewed. It was there said:

"It is undoubtedly true that upon the reinstatement of a lapsed policy the terms of the old contract become the terms of the revived contract. There is no new contract

of insurance issued, but the reinstatement is rather a contract for the continuance in force of the former contract, and as to this contract the authorities are practically uniform that the incontestable clause takes fresh effect. In the case of New York Life Ins. Co. v. Seymour (C. C. A. Sixth Circuit) 45F. (2d) 47, 73 A. L. R. 1523, wherein the policy had been incontestable for several years, the court said: 'We think the fair construction is that the incontestable clause took a fresh effect when the policy again came into force by the reinstatement, and that the right to contest because of fraud in the reinstatement would expire two years after that date. This conclusion cannot rest upon any precise language in the policy; but it is the reasonable inference as to what the parties intended by reinstating a policy containing this clause and also providing in effect, that liability should be defeated by showing fraud in the reinstatement applicaton. This is held in Teeter v. United Life Ins. Ass'n, 159 N. Y. 411, 54 N. E. 72, approved in Great Western Life Ins. Co. v. Snavely(C.C.A.) 206F. 20, 46 L. R. A. (N. S.) 1056; Mutual Life Ins. Co. v. Dreeben (D. C.) 20F. (2d) 394.'

"In the Columbian National Life Ins. Co. v. Industrial Trust Co., 53 R. I. 334, 166 A. 809, 812, the court said: 'We think the incontestability clause, which is inserted for the benefit of the insured, can properly be held to apply also to the reinstatement contract and to be operative for a period of one year from the date of the reinstatement.'

"In Teeter v. United Life Ins. Ass'n, 159 N. Y. 411, 54 N. E. 72, the policy had become incontestable before its lapse, but in considering the effect of the incontestable clause upon the reinstatement, the Court of Appeals held that after reinstatement the policy of insurance was restored in full vigor as of that date, and became incontestable two years thereafter, and further said: 'And it seems to

us, after an examination of the contract, that the defendant had two years after the reinstatement within which to investigate the condition of Teeter's health at the time of the making of the reinstatement certificate, and that after that time the policy became again indisputable.'

"In Wastun v. Lincoln National Life Ins. Co. (C. C. A. Eighth Circuit) 12 F. (2d) 422, 425, it was held that: 'This new agreement (reinstatement) is not the issuance of a policy, but a contract for the continuance in force of a former contract. This construction of the statute not only complies with its literal terms but is necessary for the reasonable protection, both of the policy holder and of the company,' while in Northwestern Mutual Life Ins. Co. v. Pickering, (C. C. A. Fifth Circuit) 293 F. 496, 497, it was assumed that, 'under the terms of the policy it was contestable by the defendant, within one year from the date of the reinstatement, for fraud of the insured in procuring the reinstatement, though at the time of the reinstatement more than a year had elapsed since the issuance of the policy.'

"In Pacific Mutual Life Ins. Co. v. Galbraith, 115 Tenn. 471, 91 S. W. 204, 206, 112 Am. St. Rep. 862, the Supreme Court of Tennessee held that upon the reinstatement of a lapsed policy there was created a new contract of insurance, though under the former policy, and said: 'If this be its nature, then it must operate in the future from the date of its reinstatement, and whatever might be its original date, or howsoever long it may have run, yet it would seem, by the force of necessary logic, to follow that the incontestable clause would begin its new life with the date of the new contract.'

"In Franklin Life Ins. Co. v. Jones, 169 Miss. 91, 152 So. 285, it was held that: 'The policy being incontestable after one year, it was the duty of the insurance company to ascertain within one year whether the statements in the ap-

plication for reinstatement were true, and to take action if untrue. We think the reinstatement is governed by the same principles as the original application.' As bearing upon this question, see, also, Great Western Life Ins. Co. v. Snavely (C. C. A.) 206 F. 20, 46 L. R. A. (N. S.) 1056; Alper v. New York Life Ins. Co. (D. C.) 41 F. (2d) 956, and Mutual Life Ins. Co. v. Dreeben, D. C. 20 F. (2d) 394.

"It seems to us that on reason and authority it must be held' that the policy here sued on, which had become incontestable before lapse and reinstatement, as to all matters covered in the original application for the policy or contract of insurance will, after revival and reinstatement, remain incontestable as to such matters, but as to the contract of reinstatement, the incontestable clause takes effect anew upon reinstatement and for the period prescribed, thereby permitting a contest because of fraud in securing the reinstatement. Any other view would open the door to the grossest deceit and fraud in securing the reinstatement of a policy that had become incontestable under its original provisions."

We approve of the conclusion thus reached by the Mississippi Supreme Court.

See also Lanier v. New York Life Ins. Co. (C. C. A 5th) 88 Fed. (2d) 196.

It has long been the trend of the decision of this court to give to beneficiaries the benefit of any doubt or ambiguity that may arise in the construction of the provisions of insurance policies, and it would seem that the construction of incontestable clauses as applied to the reinstatement of a policy, or to the policy as reinstated, as adopted by the majority of the courts which have spoken on that question, as shown in the preceding quotation, is more consistent with the decisions of this court than the

minority view. We have held that incontestable clauses are favored by the law and are for the protection of the insured, as well as the insurer. Prudential Ins. Co. v. Prescott, 130 Fla. 11, 176 So. 875.

We therefore approve the principle of construction stated in the above quotation from the Mississippi case of- New York Life Insurance Company v. Burris, and that to this extent the statement in the last paragraph of our former opinion should be clarified and limited. Otherwise, the three-year statute of limitations (Sec. 4663, par. 5, C. G. L.), which is less liberal to the insured and his beneficiary than the incontestable clause, would apply.

We are also of the opinion that at the time this bill was filed the plaintiff Insurance Company did not have an adequite remedy at law and the sound reasoning of Mr. Justice CARDOZO in the case of American Life Insurance Co. v. Stewart, *supra,* strongly supports that view. The action of the court below in upholding the equity of the bill, on motion to dismiss, should therefore be affirmed.

The facts in the case of Ocean Accident & Guarantee Corp. v. Tucker, 112 Fla. 401, 150 So. 606, distinguish that case from the case at bar. In that case, when the bill in equity was filed, an action at law upon the policy was then pending and the insurer could plead in defense of the law action the same matters that it relied upon in its equity suit for rescission of the policy. The case of Prudential Insurance Co. v. Prescott, 115 Fla. 365, 156 So. 109, is also to some extent distinguishable. In that case the insurer waited until the last date of the contestable period to deny liability and then filed suit in equity to rescind the policy. This Court held that it plainly appeared that the insurer was in a position to have given notice of its election to rescind at a much earlier date and thus to have enabled the beneficiary to have avoided the equity suit by

instituting an action at law against the company. The majority of this Court were of the opinion that the insurer was guilty of laches, and the order of the chancellor dismissing the bill was affirmed, two Judges dissenting. Mr. Justice BUFORD filed a dissenting opinion, in which the writer concurred. In the majority it was said:

"Only when an insurance company has seasonably denied liability on its policy within the contestable period and the insured has with notice thereof delayed so long thereafter in bringing a suit at law on the policy that the insurance company is about to lose its right to contest the policy during the contestable period unless it affirmatively proceeds in equity, is an equity suit to avoid the policy after loss maintainable."

After this decision in the Prescott case, above cited, was handed down, the beneficiary under that policy instituted an action at law against the insurer to recover the proceeds of the policy. The insurer, by plea, denied liability upon the same ground going to the validity of the policy which it had relied upon in its previous suit in equity for rescission of the policy. This Court held that although such plea was filed after the expiration of the contestable period, the previous filing of the bill in equity to rescind the policy, which was filed within the contestable period, amounted to an institution of a contest within the meaning of the terms of the policy, and that therefore the Insurance Company was entitled to try such issues in the law action. Prudential Insurance Company v. Prescott, 130 Fla. 11, 176 So. 875.

For the reasons above pointed out, our former judgment of reversal with directions to dismiss the bill, is set aside and vacated, and our former opinion, to the extent above indicated, is modified; and a judgment of affirmance of the order appealed from will now be entered,

and the cause remanded to the trial court with directions for further proceedings therein consistent with the views hereinabove expressed.

Affirmed and remanded.

TERRELL, C. J., WHITFIELD and BUFORD, J. J., concur.

CHAPMAN, J., adheres to original opinion.

THOMAS, J., not participating as case was presented before he became a member of the Court.