419 So.2d 800 (1982)
NORTH MIAMI GENERAL HOSPITAL, Appellant,
v.
CENTRAL NATIONAL LIFE INSURANCE COMPANY, Appellee.
No. 81-1145.
District Court of Appeal of Florida, Third District.
September 28, 1982.
*801 Lawrence & Daniels and Adam Lawrence, Miami, for appellant.
Shutts & Bowen and Barbara E. Vicevich and Karen H. Curtis, Miami, for appellee.
Before HUBBART, C.J., and SCHWARTZ and NESBITT, JJ.
NESBITT, Judge.
North Miami General Hospital (Hospital) brought an action for the value of hospital services rendered to Clifford Teachman against Teachman and his major medical insurer, Central National Life Insurance Company (Insurer). The Hospital won a final judgment against Teachman, but the Insurer obtained a final summary judgment relieving it from liability. The Hospital appeals the final summary judgment entered in favor of the Insurer.
On March 1, 1976, the Insurer issued to Teachman a policy insuring against sickness when "such sickness ... first manifests itself while a covered person is insured... ." The policy also contained a statutorily-required[1] "incontestability" provision as follows:

TIME LIMIT ON CERTAIN DEFENSES:
(a) After two years from the date a person becomes covered under this policy no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred.
(b) No claim for loss incurred commencing after two years from the date a person becomes covered under this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy.
As early as 1972, Teachman was diagnosed as having a humpback condition known as kyphosis. However, Teachman did not reveal this fact on his application for insurance, allegedly because he had never been informed of the 1972 diagnosis. In March of 1977, Teachman entered the Hospital to undergo corrective surgery for his condition. The Hospital sought payment for the expenses in treating Teachman on this occasion. The Insurer denied it on the ground that the kyphosis had manifested itself prior to the issuance of the policy and therefore was excluded from coverage under the "first-manifest" clause quoted above.
The Hospital argues here that Teachman filed his claim after the two-year period for contesting coverage for pre-existing illness and thus that the Insurer cannot deny coverage in the face of the incontestability clause. We disagree.
The key language for determining whether an illness falls within the two-year contestability period or within the incontestability period arising thereafter is that "[n]o claim for loss incurred commencing after two years" from the date of coverage of the policy may be contested by the insurance company on the ground that the illness *802 pre-existed that date. Presented with a nearly identical provision of a disability policy, the court, in Mutual Life Insurance Company of New York v. Hayden, 87 Misc.2d 1039, 386 N.Y.S.2d 978 (Sup.Ct. 1976), aff'd, 60 A.D.2d 823, 401 N.Y.S.2d 992, motion for leave to appeal dismissed, 44 N.Y.2d 838, 406 N.Y.S.2d 758, 378 N.E.2d 121 (1978), held that the date a claim is filed is irrelevant to a determination of the applicability of the incontestability clause.[2] The important date is when the loss is incurred. Here, the loss was incurred when Teachman began receiving the treatment for which benefits were sought. This occurred well within the two-year contestable period.
Were we to follow the Hospital's interpretation and place emphasis on the date the claim is filed, the insured could always avoid contestability merely by waiting until the two-year period had expired before filing a claim. We cannot adopt an interpretation which would render the legislatively-created two-year provision ineffective and purposeless. Dickinson v. Davis, 224 So.2d 262, 264 (Fla. 1969); City of Indian Harbour Beach v. City of Melbourne, 265 So.2d 422, 424 (Fla. 4th DCA 1972); see Boalt v. City Commissioners, City of Miami, 408 So.2d 1080, 1083 (Fla. 3d DCA 1982).
Consequently, we hold that the incontestability clause by its own terms does not apply in this case because the loss resulting from a pre-existing condition commenced within two years of the date of the policy. Keaten v. Paul Revere Life Insurance Company, 648 F.2d 299, 304 (5th Cir.1981), (Roney, J. concurring).[3] The Hospital does not argue that Teachman's illness did not manifest itself prior to issuance of his policy. On the contrary, it admits that Teachman's condition was diagnosed as kyphosis in 1972, four years previously. Thus, the policy's definition of sickness which excludes pre-manifesting conditions bars Teachman, and therefore, the Hospital, from recovering under the policy.
Alternatively, the Hospital maintains that the Insurer has waived or is estopped to assert the limitations on coverage in its policy and that the Insurer owed a duty to the Hospital to exercise due care in investigating Teachman for the purpose of discovering medical conditions which would render him ineligible for benefits. The rule is that an insurance company has the right to rely on an applicant's representations in an application for insurance and is under no duty to inquire further, New York Life Insurance Company v. Nespereira, 366 So.2d 859 (Fla. 3d DCA 1979), unless it has actual or constructive knowledge that such representations are incorrect or untrue. Hardy v. American Southern Life Insurance Company, 211 So.2d 559 (Fla. 1968); Joe's Creek Industrial Park, Inc. v. Loyal American Life Insurance Company, 251 So.2d 348 (Fla. 2d DCA 1971). In this case, the mere fact that Teachman may have appeared "stooped over" to the Insurer's *803 agents[4] did not put the Insurer on notice that further inquiry was necessary. New York Life Insurance Company v. Nespereira, supra. The Insurer is not estopped to assert the exclusions in its policy; nor was it under a duty to investigate Teachman's condition at the time he became insured.
We have carefully examined the remaining points in the Hospital's brief and determine that only one merits discussion and makes error appear. Subsequent to his hospitalization for kyphosis, Teachman was readmitted to the Hospital and treated for ulnar nerve palsy. The Insurer denied coverage for this treatment on the basis of a policy provision barring recovery for a sickness that is due to the same or related causes as a prior sickness for which there has been no recovery. However, no evidence was offered to show whether the ulnar nerve palsy was due to the same or related causes as the kyphosis. Obviously then, the summary judgment must be reversed as to the question of the Insurer's liability for the ulnar nerve palsy treatment since triable issues of fact exist with regard thereto.
Affirmed in part, reversed in part.
NOTES
[1] § 627.607, Fla. Stat. (1975).
[2] For reasons unapparent, the author of the Hayden opinion felt it was necessary to distinguish the case of Rackear v. Springfield Fire & Marine Insurance Company, 48 Misc.2d 707, 265 N.Y.S.2d 715 (Sup.Ct. 1965) (enforcing a similar incontestability provision) on the basis that Rackear dealt with a major medical insurance policy while Hayden concerned a disability income policy. In reality, there was no need to distinguish Rackear on that ground. Rackear merely stated that the loss is incurred when the medical and hospital bills are incurred. 265 N.Y.S.2d at 720. However, in Rackear, the insured sought coverage for hospital bills which were incurred for treatment which began a full six months after the expiration of the contestability period. Thus, the incontestability period obviously applied in that case.
[3] We note that even if the loss was incurred after the two-year contestable period and thus the Insurer was barred from contesting the claim on the ground that the disease was pre-existing, the Hospital would still be presented with the formidable stumbling block of Massachusetts Casualty Insurance Company v. Forman, 516 F.2d 425 (5th Cir.1975), cert. denied, 424 U.S. 914, 96 S.Ct. 1114, 47 L.Ed.2d 319 (1976) (construing Florida law) which held that in insurance policies containing both the pre-existing illness incontestability and the pre-manifesting exclusion, the incontestability clause does not expand coverage to illnesses which not only exist but also manifest themselves prior to issuance of the policy. But see Fischer v. Massachusetts Casualty Insurance Company, 458 F. Supp. 939 (S.D.N.Y. 1978).
[4] In fact, an agent of the Insurer attributed Teachman's appearance to "typical teenage slouch."