681 So.2d 747 (1996)
Jane KAUFMAN, individually and as mother, next friend and natural guardian of Laurel Kaufman, a minor child, Appellant,
v.
MUTUAL OF OMAHA INSURANCE COMPANY, Appellee.
No. 94-1233.
District Court of Appeal of Florida, Third District.
July 31, 1996.
*748 H.C. Starkweather, Miami Springs, for appellant.
Magill & Lewis and R. Fred Lewis, Miami, for appellee.
Before BARKDULL, COPE and GODERICH, JJ.

CORRECTED OPINION
COPE, Judge.
Jane Kaufman appeals an adverse summary final judgment. We reverse.

I.
On March 27, 1991, appellee Mutual of Omaha ("the insurer") issued a major medical insurance policy to appellant Jane Kaufman (the "insured" or the "mother"). Ms. Kaufman, a widow, purchased the policy to provide coverage for her 14-year-old daughter. The policy would provide reimbursement for medical or hospitalization expense after a $2,000 deductible was satisfied.
Two years and forty-five days after the policy was issued, the insurer delivered a letter to the insured which purported to rescind the policy and which returned the premiums the insured had paid. The insurer asserted that there were fraudulent misstatements in the application. The insurer took the position that under a provision of the incontestability clause contained in the insurance policy, the insurer was entitled to void the coverage even though the basic two-year incontestable period had expired.
The mother brought suit for (I) declaratory judgment; (II) reinstatement of the insurance contract; (III) breach of contract; and (IV) outrageous conduct causing severe emotional distress. The mother asserted that the insurance policy was in conflict with section 627.607, Florida Statutes (Supp.1992).[1] She contended that when the policy was brought into conformity with Florida law, the insurer had no right to cancel the policy. Alternatively, she asserted that if the insurer did have the right to cancel, there were in any event no fraudulent misstatements.
The trial court granted summary judgment for the insurer and the mother has appealed.

II.
The parties agree that under Florida law, this medical insurance policy must have an *749 incontestability clause. See § 627.607, Florida Statutes (Supp.1992). The Insurance Code requires the insurer to choose one of two statutory alternatives. The insurer can select subsection (1), or subsection (2), but not both.[2]
The insurance policy actually issued in this case impermissibly combines alternatives (1) and (2).[3] Although the statute requires the insurer to select either alternative 1 or alternative 2, the insurer has selected elements of both. The insured is correct in saying that this insurance policy provision violates Florida law.[4]
If an insurance policy does not comply with the Insurance Code, the policy is to be construed in a way which brings it into compliance:
627.637. Construction of noncomplying contracts
If any insurer writes or issues in this state any health insurance contract, as contemplated by this chapter, and the form of such contract is not authorized by or in conformity with the provisions of this chapter, the contract shall nevertheless be a valid and binding contract of the insurer, and shall be construed as though its terms and provisions were in conformity with those required by this chapter, any provision in the contract to the contrary notwithstanding.

§ 627.637, Fla. Stat. (1991)(emphasis added); see also 18 Couch on Insurance 2d § 72:22, at 296-97 (Rev. ed.1983). Likewise, the insurance policy itself states that if it varies from state law, the policy is amended to conform to state law.
How, then, should the policy be modified? The policy can be corrected by reading it to include solely subsection (1)(the alternative favorable to the insurer), or solely subsection (2)(the alternative desired by the insured).
The Florida Supreme Court has said that "[i]ncontestability clauses in insurance policies are favored in the law, and the courts are ever ready to construe them, if possible, in favor of the insured." Prudential Ins. Co. v. Prescott, 130 Fla. 11, 176 So. 875, 878 (1937); see also Winer v. New York Life Ins. Co., 140 Fla. 534, 190 So. 894, 900-01 (1938)(construing incontestability clause); Prudential Ins. Co. v. Prescott, 115 Fla. 365, 156 So. 109, 111-12 (1933)(same); Aetna Life & Casualty Co. v. Thorn, 315 So.2d 219, 221 (Fla. 3d DCA 1975)(same); Prudential Ins. Co. v. Rhodriquez, 285 So.2d 689, 690 (Fla. 3d DCA 1973)(same); 31 Fla. Jur.2d Insurance § 659 (1981). The alternative must be chosen which is the most favorable to the insured, subsection (2).
*750 As a matter of law, therefore, the insurance policy must be deemed to read as follows:
Incontestable:
(a) Misstatements in the Application: After this policy has been in force for 2 years during the insured's lifetime (excluding any period during which the insured is disabled), the insurer cannot contest the statements in the application.
(b) Preexisting Conditions: No claim for loss incurred or disability starting after 2 years from the issue date will be reduced or denied because a sickness or physical condition, not excluded by name or specific description before the date of loss, had existed before the effective date of coverage.
§ 627.607(2), Fla. Stat. (Supp.1992). Under this alternative, the policy is incontestable after two years.
No action was taken by the insurer to rescind this insurance policy until after the two-year time period had run. Consequently, the insurance policy had become incontestable and the insurer was not allowed to rescind it on the basis of alleged misstatements in the insurance application.[5] The summary judgment must be reversed. The insured is entitled to a declaratory judgment stating that the purported rescission by the insurance company was legally ineffective, and that the insurance policy remains in force.[6]

III.
The insurance company appears to argue alternatively that even if the incontestability clause precluded outright rescission of this policy, the insurer is nonetheless allowed to refuse coverage for preexisting conditions.
The insurance policy contains a preexisting condition limitation as follows:

PREEXISTING CONDITION LIMITATION
Subject to the Time Limit on Certain Defenses provision, preexisting conditions are not covered unless disclosed on the application and not excluded by name or specific description. A preexisting condition is a condition misrepresented or not shown in your application for which medical advice or treatment was recommended by or received from a physician prior to the Policy Date.

(Emphasis added). Under this provision, coverage can be denied for a preexisting condition "for which medical advice or treatment was recommended by or received from a physician prior to the Policy Date," in this case March 27, 1991.
The prohibition on preexisting conditions is, however, "subject to the Time Limit on Certain Defenses provision." The "Time Limit on Certain Defenses provision" is, of course, the incontestability clause considered earlier in this opinion. As determined above, properly construed it provides in relevant part:

*751 (b) Preexisting Conditions: No claim for loss incurred or disability starting after 2 years from the issue date will be reduced or denied because of a sickness or physical condition, not excluded by name or specific description before the date of loss, had existed before the effective date of coverage
§ 627.607(2), Fla. Stat. (Supp.1992).
Simply put, there is a two-year incontestability period which applies to preexisting conditions. If a "loss" occurs prior to the expiration of the two-year incontestability period, the insurance company is allowed to deny coverage for that loss if it was an undisclosed or misrepresented preexisting condition. See North Miami Gen. Hosp. v. Central Nat'l Life Ins. Co., 419 So.2d 800, 801-02 (Fla. 3d DCA 1982). If, however, the insured sustains loss after the two-year incontestability period has expired, the loss must be covered.
The insured states that there was never a loss during the first two years which exceeded the $2,000 deductible, an assertion which appears to be supported by the record. If on remand there is a claim for loss incurred in the first two years, this court's reversal is without prejudice to the insurer to raise the defense of preexisting condition, if applicable.[7]

IV.
The complaint included a count against the insurance company for outrageous conduct in rescinding this insurance policy. See Dominguez v. Equitable Life Assurance Society, 438 So.2d 58 (Fla. 3d DCA 1983), approved, 467 So.2d 281 (Fla.1985); see also Dependable Life Insurance Co. v. Harris, 510 So.2d 985 (Fla. 5th DCA 1987).
The insurer moved for summary judgment on the theory that in good faith it merely invoked a coverage defense, and is entitled to summary judgment on authority of Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277 (Fla.1985). In McCarson, the record showed that the insurer "did no more than assert legal rights in a legally permissible way. As such, [the insurer's] actions are `privileged under the circumstances.'" Id. at 279.
The burden is, of course, on the insurer as the moving party in this case to demonstrate the nonexistence of any disputed issue of material fact. See Carr Smith & Associates, Inc. v. Fence Masters, Inc., 512 So.2d 1027, 1028 (Fla. 3d DCA 1987). Further, on a motion for summary judgment the record must be read in the light most favorable to the nonmoving party, in this case, the insured. See Moore v. Morris, 475 So.2d 666, 668 (Fla.1985). We conclude that the insurer has not carried its burden of showing its entitlement to summary judgment on this claim on the record as it now stands.
The insurance policy in this case went into effect March 27, 1991, and the insurance application was dated the same day. In October, 1992 the child's physician made a diagnosis that the child suffered from eating disorders, anorexia nervosa and bulimia nervosa. A bill referring to this diagnosis was received by the insurer that month. The insurer requested the child's medical records. These were reviewed by the insurer's underwriting department. The underwriting department gave a "written underwriting opinion that based on the prior history of depression within one year prior to the application for coverage, based on Mutual of Omaha Insurance Company's Underwriting Manual in effect at the time of the application, it was determined that Laurel Kaufman would be ineligible for coverage under this policy." *752 The insurer took the position that there had been fraudulent misstatements in the application and delivered a letter purporting to rescind the policy.
To begin with, the insurer's affidavit does not set forth any definition of the word "depression" as used in the insurer's underwriting standard. The insurer did not file the portion of the Underwriting Manual referred to in the affidavit. We assume for present purposes that the term "depression" in this instance means a medical diagnosis of clinical depression. For present purposes the mother's opposing affidavit is taken as true, as well as the deposition of the physician and his explanation of the medical records. The record indicates that prior to the March 27, 1991 application date, there was never a clinical diagnosis of depression, nor was depression the reason that the child consulted the doctor.[8]
The insurer also took the position that the application failed to disclose consultation with a licensed mental health counselor and a psychologist which, if disclosed, would have led to the discovery of a prior history of depression. As a preliminary matter, it does not appear that this insurance application actually calls for disclosure of a consultation with a counselor or psychologist. The application asks for the names and addresses of doctors or health care providers usually consulted, and itemizes "doctor, chiropractor, physical therapist, medical attendant or practitioner." The application also asks whether the applicant has been "examined by a doctor or received medical care for any mental or physical disorder[.]" (Emphasis added). Consultation with a counselor or psychologist is nowhere mentioned.[9]
In any event, the deposition of the licensed mental health counselor was taken. Read in the required light, the record establishes that the child did not consult the licensed medical health counselor until after the insurance policy had already gone into effect.[10] The insurer also points to a reference in the medical doctor's office record that the child sees a psychologist. This entry was made by the nurse in the doctor's office. It referred either to the child's consultation with a school counselor, or possibly the child's minister, with whom the child had met during the preceding year, after the child's father committed suicide. Assuming that disclosure of any of these consultations was actually required by the insurance application, there is no indication in the record of any diagnosis of clinical depression by any of these individuals prior to the date of the insurance application.
It was the insurance company's burden to explain what the term "depression" means in its underwriting manual and how, if at all, that term applies to the child's medical history in this case. The insurer's conclusory affidavit does not do so.

V.
The summary judgment is reversed and the cause remanded with directions to enter a declaratory judgment as follows:
(1) The insurance policy as written violates Florida law.
(2) The insurance policy must be interpreted, and deemed amended, to include *753 the incontestability clause set forth in subsection 627.607(2), Florida Statutes (Supp.1992).
(3) The first paragraph of the incontestability clause presently set forth in the insurance policy, which is substantially identical to subsection 627.607(1), Florida Statutes (Supp.1992), must be stricken out of the insurance policy.
(4) Under the terms of the incontestability clause set forth in subsection 627.607(2), Florida Statutes (Supp. 1992), this insurance policy became incontestable two years after issuance.
(5) The insurer's attempted rescission of the policy occurred over two years after the policy was issued, and consequently the attempted rescission was legally ineffective. The policy remains in force.
(6) Where supported by the facts, the insurer may invoke the "preexisting condition limitation" for any "loss" which was incurred during the first two years of the policy, see North Miami Gen. Hosp. v. Central Nat'l Life Ins. Co., 419 So.2d at 801-02, but may not invoke that limitation for any loss which was incurred after the two-year incontestability period expired.
The cause is remanded for further proceedings consistent herewith on the remaining counts of the plaintiff's complaint.
Reversed and remanded.
NOTES
[1] The 1992 version of the statute was in force at the time this policy was renewed. Insofar as pertinent here, the statutory alternatives were the same under the version of the statute in force at the time the policy was issued. See § 627.607, Fla. Stat. (1989).
[2] The statute states:

627.607 Time limit on certain defenses.
(1) The contract shall include the following provision:
"Time Limit on Certain Defenses: After 2 years from the issue date, only fraudulent misstatements in the application may be used to void the policy or deny any claim for loss incurred or disability starting after the 2-year period."
(2) A policy may, in place of the provision set forth in subsection (1), include the following provision:
"Incontestable:
(a) Misstatements in the Application: After this policy has been in force for 2 years during the insured's lifetime (excluding any period during which the insured is disabled), the insurer cannot contest the statements in the application.
(b) Preexisting Conditions: No claim for loss incurred or disability starting after 2 years from the issue date will be reduced or denied because a sickness or physical condition, not excluded by name or specific description before the date of loss, had existed before the effective date of coverage."
(Emphasis added).
[3] The insurance policy states:

Time Limit on Certain Defenses: After two years from the issue date of this policy, we cannot use misstatements, except fraudulent misstatements in your application, to void coverage or deny a claim for loss that happens after the two-year period.
No claim for loss incurred after two years from the date a person becomes covered under this policy shall be reduced or denied on the ground that a disease or physical condition, not excluded from coverage by name or specific description, existed prior to the effective date of such person's coverage.
[4] The insurer argues that the insurance policy form was approved in 1988 by the Department of Insurance. Department of Insurance approval does not override the explicit terms of a statutory requirement. See Gonzalez v. Associates Life Ins. Co., 641 So.2d 895, 897 n. 1 (Fla. 3d DCA 1994).
[5] Although immaterial to our disposition, Florida cases also hold that where an insurance policy contains an incontestability clause, the insurance company must contest the policy by appropriate litigation prior to the expiration of the two-year incontestable period. Prudential Ins. Co. v. Prescott, 156 So. at 113; accord Winer v. New York Life Ins. Co., 190 So. at 896-98; Prudential Ins. Co. v. Prescott, 176 So. at 879-80; Home Life Ins. Co. v. Regueira, 313 So.2d 438, 439 (Fla. 2d DCA 1975), cert. denied, 328 So.2d 844 (Fla.1976); Aetna Life & Casualty Co. v. Thorn, 315 So.2d at 220; Prudential Ins. Co. v. Rhodriquez, 285 So.2d at 690, 31 Fla. Jur.2d Insurance § 662 (1981); see also 18 Couch on Insurance 2d §§ 72:98; 72:101, at 356-59. No litigation was instituted within the two-year period.

This case does not involve any issue under section 627.409, Florida Statutes (1991), the general statute governing misrepresentations in insurance applications. Under that statute, the insurer is not required to demonstrate fraud, but only needs to show a misrepresentation material to the risk assumed. See Continental Assurance Co. v. Carroll, 485 So.2d 406, 409 (Fla.1986). Even a nonintentional misstatement can bar recovery if material to the risk assumed. Id. The majority of the cases relied on by the insurer were decided under that statute. The present case is controlled by section 627.607, and the body of law relating to incontestability clauses.
[6] The insured argues alternatively that when the summary judgment record is read in the light most favorable to her as the nonmoving party, there were no fraudulent misstatements. We need not reach this argument but note that it appears to have substantial merit.
[7] The insurer has suggested that the child had a preexisting condition of depression. Reading the present record in the light most favorable to the insured as nonmoving party, there was no medical diagnosis or treatment of clinical depression prior to the application date of March 27, 1991.

The insurer has also mentioned in its brief that the child's doctor's record for December, 1990 contains, under "clinical impressions," the notation "anorexia." The child's doctor stated in his deposition that the reference meant loss of appetite. See 1 J.E. Schmidt, Attorneys' Dictionary of Medicine A-273 (1993). "Anorexia" is not the same as the eating disorder, "anorexia nervosa." See id. The insurer intimates that there was a preexisting diagnosed but undisclosed eating disorder. The child's doctor testified that he made no medical diagnosis of anorexia nervosa until October 5, 1992, long after the policy was in force. The purpose of the child's doctor visit in December of 1990 was for a sore throat, fever, swollen glands and a headache.
[8] On two of the child's visits to the doctor in January, 1991 the child's record contains a notation of "depression." The doctor explained that this was a notation made by the nurse. The doctor testified that the child "would lose her temper very easily, and would become anxious and quote depressed, as written by the nurse." The child did not come to see the doctor on these dates on account of depression, nor was there any clinical diagnosis of depression. The doctor believed the child's problems were related to a recurrent viral syndrome.
[9] The insurance policy appears to impose a lifetime maximum of $10,000 in benefits for mental or nervous disorder.
[10] The date of the insurance application was March 27, 1991. The counselor's office records were destroyed in Hurricane Andrew, so the counselor could not be any more specific than that he was first consulted in March or April of 1991. When asked at deposition, the counselor testified he had no reason to disagree with the mother's assertion that he was first consulted in April, 1991. The same inference follows from the mother's affidavit; the affidavit indicates that the only counselor consulted prior to March 27, 1991, was a school counselor. Since all inferences must be drawn favorably to the mother as the nonmoving party on summary judgment, for present purposes it is established that the mental health counselor was first consulted in April, 1991.