SORONDO, J.
Sonia Cisneros (plaintiff) appeals the lower court’s Final Order granting Summary Judgment for Costco Wholesale Corp.
On September 11, 1997, plaintiff entered the Costco Warehouse in Miami to shop. She was in the store approximately fifteen minutes when she walked back to where the cash registers are located in order to get a cart. While passing the area in front of the registers, she slipped and fell. Plaintiff saw nothing on the floor prior to her fall. After her fall, she observed a line of something through which a few wheel tracks and several footprints had been made. She was assisted by a Costco employee who had brought a wheelchair and helped her into it. The employee then wheeled her into the manager’s office, where she remained until an ambulance arrived to take her to the hospital.
Independent eyewitness Irma Sandoval testified in her deposition that she worked for an independent contractor at the time of plaintiffs accident. Sandoval was demonstrating jellybeans at a table approximately nine to thirteen feet from where the plaintiff fell. Sandoval observed plaintiff walking approximately three or four meters away and saw her fall to the floor between the location where Sandoval was demonstrating jellybeans and the checkout aisle. Approximately five minutes before plaintiffs fall, Sandoval had observed water spilled on the floor from an adjacent flower display, maintained by another independent contractor. Sandoval took a paper towel and wiped up the water. At that time, she observed the general area, including the area where the plaintiff had fallen, and it was clean and free of any foreign substances. While Sandoval saw track marks in the line of liquid soap, she testified that the liquid soap had only been on the floor for a short time. The source of the liquid soap was a cart, which was pushed through the area just before the plaintiffs arrival.
Immediately after the accident, Sandoval observed the cart with the leaking soap. The cart had moved only four or five meters from the scene of the accident. Immediately after plaintiffs fall, Sandoval and Costco employees observed a thin thread of liquid soap emanating from the cart in question. They followed the trail and found a male customer with the leaking cart half way through the aisle. One of the Costco employees then stopped the customer and cleaned up the mess.
Costco employee Angela Lawson testified in her deposition that on the day of the accident, she was on duty in the Member Service Department, located near the front entrance to the warehouse. She was called to the office to interview the plaintiff after the fall. Immediately after the fall, she inspected the scene of the accident as part of her investigation. She testified that Sandoval was twenty-seven feet away from the plaintiff at the time of the fall. There was a trail of liquid detergent from the laundry aisle, where the liquid detergent is displayed, running directly to the cash registers, where the cart containing the leaky bottle was located. Lawson took photographs of the trail of detergent at the scene. The cart that was the source of *821 that trail was still in front of the register when Lawson arrived. Lawson came to the conclusion that the detergent had been on the floor for the amount of time it took the cart to go from the laundry aisle to the register.
In September of 1999, a hearing was held by the lower court on Costco’s Motion for Summary Judgment. The lower court found the unrefuted testimony of Sandoval and Lawson established the source of the detergent on the floor and the length of time it had been there was five minutes or less and that there was no other testimony that this was not true. The court granted Costco’s motion, and this appeal followed.
The plaintiff argues that based on circumstantial evidence, specifically, dirty footprints, track marks, and a wet substance on Costco’s floor, this case should have gone to the jury as there was a genuine issue of material fact concerning whether Costco had constructive notice of the dangerous condition. We agree.
Florida law is clear that “constructive notice may be shown by presenting evidence that the condition existed for such a length of time that, in exercise of ordinary care, the defendant should have known of the condition.” Burnett v. Lower Fla. Keys Health Sys., Inc., 722 So.2d 951, 951 (Fla. 3d DCA 1998). In Altman v. Publix Supermarkets, Inc., 579 So.2d 351 (Fla. 3d DCA 1991), the plaintiff slipped and fell at the supermarket. She testified that the floor was dirty, oily and garbage strewn. Additionally, she said that “grocery cart tracks and footprints traversed the dirty area where she fell.” Id. at 352. This Court held that her testimony “was sufficient evidence to present a fact question as to whether a dangerous condition was created by the store’s employees ... and whether the dangerous condition on the floor existed for a sufficient length of time to charge the defendant with constructive notice.” Id.; See also Montgomery v. Florida Jitney Jungle Stores, 281 So.2d 302 (Fla.1973); Winn-Dixie Stores, Inc. v. Guenther, 395 So.2d 244 (Fla. 3d DCA 1981). We find this case indistinguishable from Altman.
Costco raises two arguments worthy of discussion. First, it argues that the undisputed evidence establishes that the liquid detergent in question could not have been on the floor for more than five minutes. The second argument seeks to bolster the first. Costco argues that when the shopping cart containing the leaking detergent was identified, there was no pooling of liquid detergent underneath the cart. Such pooling would have been present had the cart been stationed at that location for any significant period of time. The fact that no such pooling was present, Costco posits, establishes that the cart traversed the distance between the laundry supply aisle and its ultimate resting place within a very short span of time. We disagree that this is the only interpretation possible.
Addressing the second argument first, we are unpersuaded that the absence of pooling of the liquid detergent underneath the grocery cart establishes the timing argued by Costco. We first note that we can find no evidence in this record that there was no pooling of liquid detergent underneath the grocery cart in question. The sole question regarding this issue was put to Ms. Lawson during her deposition as follows:
Q. Was there any large puddle of detergent under the cart when you arrived at the scene?
A. No.
(Emphasis added). The testimony was that there was no large puddle under the cart. This does not exclude the possibility that there may have been some liquid detergent under the cart, a question that'was not asked by either side. Nevertheless, assuming for the sake of argument, that there was no pooling, an example serves to discredit Costco’s position. If the leak emanated from a hole on the bottom of the detergent bottle, the scenario proposed by Costco might be correct. However, if the hole was on the high end of the bottle, the *822 liquid content would spill out only until such time as the level of the liquid inside the bottle dropped below the level of the hole. This could result in only a momentary leak. On this issue, witness Angela Lawson testified in her deposition as follows:
Q. Where was the leak coming from?
A. It was coming, it was turned sideways and it was dripping from the cap from, dripping, from it being sideways it was dripping out of the cap.
Q. From a visual sight of the cap, did the cap appear to be on the bottle?
A. Yes.
Q. Did the cap appear to be opened at the time you saw it, if you recall?
A. The cap was on the laundry detergent bottle. I didn’t do any further checking of it.
Although there was no hole in the bottle, the same reasoning discussed above is still applicable. Depending on the shape of the bottle, the exact location of the cap as the bottle lay on its side and the volume of liquid contained therein, the leak may have been only momentary. Under such circumstances there would have been no pooling even if the cart had been there for a considerable period of time.
As concerns Costco’s first argument, we do not agree that the evidence in this record, when viewed in the light most favorable to the non-moving party, Kaufman v. Mutual of Omaha Ins. Co., 681 So.2d 747, 751 (Fla. 3d DCA 1996)(“on a motion for summary judgment the record must be read in the light most favorable to the nonmoving party.”); Delandro v. America’s Mortgage Servicing, Inc., 674 So.2d 184, 186 (Fla. 3d DCA 1996); and Tire Kingdom, Inc. v. Waterbed City, Inc., 654 So.2d 1005, 1006 (Fla. 3d DCA 1995), establishes that the liquid detergent could not have been on the floor for a period in excess of five minutes. When questioned on the issue of time at her deposition, Ms. Lawson testified as follows:
Q. Were you able to determine, Ms. Lawson, from your investigation how long the detergent was on the floor.
A. A specific time, no.
Q. Now you say recently. What do you base that on?
A. Because there was a floor walk done in between every hour that it’s done and had to have occurred between the floor walks.[1]
Q. So it could have occurred one or 59 minutes before the client fell, is that the longest time period that that, that we could give on that, hourly checks?
A. Half hour, 45 minutes.
Viewing the facts of this case in the light most favorable to the non-moving party, we conclude that there are genuine issues of material fact which should be decided by a jury. Accordingly, we reverse and remand for further proceedings.
Reversed and remanded.

. Ms. Lawson had previously testified that a floor walk "is a walk that's done on an hourly basis to check the building for safety and security issues.”