**PAUL REVERE LIFE INSURANCE CO., Plaintiff,**

v.

**Bruce McPHEE, Defendant.**

No. 99–6707–CIV.

United States District Court,
S.D. Florida.
Miami Division.

June 13, 2001.

John E. Meagher, Shatts & Bowen, Miami, FL, for plaintiff.

Timothy P. Beavers, McFann & Beavers, P.A., Fort Lauderdale, FL, for defendant.

## ORDER GRANTING BRUCE MCPHEE'S MOTION FOR SUMMARY JUDGMENT

JORDAN, District Judge.

On October 15, 1993, and July 22, 1994, Paul Revere Life issued disability insurance policies to Bruce McPhee. In 1998, Mr. McPhee became totally disabled as a result of injuries he suffered in an automobile accident on July 18, 1993, prior to the issuance of the policies. The issue in this declaratory judgment action brought by Paul Revere is whether, under Florida law, the preexisting conditions clauses in the policies provide Mr. McPhee with coverage for his disability.

Although they dispute the appropriate result, the parties agree that there are no material issues of fact and that the case is ripe for judgment as a matter of law under Federal Rule of Civil Procedure 56. *See* Transcript of Hearing at 15–16 [D.E. 56] (Sept. 18, 2000). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). For the following reasons, Mr. McPhee's motion for summary judgment [D.E. 37] is GRANTED, and Paul Revere's motion for summary judgment [D.E. 32] is DENIED.

### I. FACTS

As noted above, Paul Revere issued disability insurance policies to Mr. McPhee in 1993 and 1994. Each policy provides that it is "non-cancellable" and "guaranteed continuable" until age 65 "as long as the premium is paid on time."

Mr. McPhee obtained the policies pursuant to his employment agreement with Wrono Enterprise Corporation, which paid the premiums on the policies until Mr. McPhee's employment ended on December 26, 1996. Following his termination, Mr. McPhee paid the premiums on the policies himself. On August 7, 1998—more than two years after the issuance of the policies—Mr. McPhee notified Paul Revere that he planned on making a disability claim, and stated that he had been unable to work since July 14, 1998, due to an accident. The accident that disabled Mr. McPhee occurred on July 18, 1993, before Paul Revere issued either of the policies. The parties have agreed that, for purposes of summary judgment, it is irrelevant whether Mr. McPhee misrepresented the existence of his accident on his applications. *See* Transcript at 6–7, 22–23.

After an initial investigation, Paul Revere paid Mr. McPhee a total of $91,200.00 in disability benefits under a reservation of rights. Paul Revere stopped payments

nine months later, having determined that Mr. McPhee was not eligible for benefits. The parties do not dispute Mr. McPhee's disability in this action. Paul Revere admits, for purposes of summary judgment at least, that Mr. McPhee is totally disabled.

The policies provide coverage for "loss due to injury or sickness." "Injury" is defined as "accidental bodily injury sustained after the date of issue and while [the] policy is in force," while "sickness" is defined as "sickness or disease which first manifests itself after the date of issue and while [the] policy is in force." *See* 1993 Policy at 6 [D.E. 32, Exh A] (Oct. 15, 1993); 1994 Policy at 6 [D.E. 32, Exh. B] (July 22, 1994). The policies also contain an incontestability/preexisting conditions clause, which provides that "[n]o claim for loss incurred or disability that starts after two years from the date of issue will be reduced or denied because a sickness or physical condition not excluded by name or specific description before the date of loss had existed before the date of issue." *See* 1993 Policy at 17 (§ 10.2.b); 1994 Policy at 17 (§ 10.2.b). This clause is mandated by Florida law. *See* FLA.STAT. § 627.607.[1]

In addition to the required incontestability/preexisting conditions clause, the policies contain an additional provision regarding preexisting conditions:

PREEXISTING CONDITION

During the first two years from the date of issue, we will not pay benefits for a pre-existing condition if it was known but not disclosed on your application. Pre-existing condition means a sickness or physical condition for which prior to the date of issue, medical advice or treatment was recommended by or received from a physician.

1993 Policy at 11 (§ 3.2); 1994 Policy at 11 (§ 3.2).[2]

Paul Revere contends that no coverage exists because the accident which caused Mr. McPhee's disability occurred before the policies were issued. According to Paul Revere, Mr. McPhee's disability is not a covered "injury" or "sickness." Mr. McPhee responds that under the clauses relating to preexisting conditions, he is entitled to coverage—even though his disability results from an injury sustained before the policies were issued—because his disability occurred two years after the policies were issued. In reply, Paul Revere points to *Massachusetts Casualty Company v. Forman*, 516 F.2d 425 (5th

1. Entitled "Time limit on certain defenses," § 627.607 provides as follows:
(1) The contract shall include the following provision:
"Time Limit on Certain Defenses: After 2 years from the issue date, only fraudulent misstatements in the application may be used to void the policy or deny any claim for loss incurred or disability starting after the 2–year period."
(2) A policy may, in place of the provision set forth in subsection (1), include the following provision:
"Incontestable:
(a) Misstatements in the Application: After this policy has been in force for 2 years during the insured's lifetime (excluding any period during which the insured is disabled), the insurer cannot contest the statements in the application.
(b) Preexisting Conditions: No claim for loss incurred or disability starting after 2 years from the issue date will be reduced or denied because a sickness or physical condition, not excluded by name or specific description before the date of loss, had existed before the effective date of coverage."

2. Directly opposite this clause, on the left-hand side of the page, is this question in italics: "What if a disability results from a preexisting condition?"

Cir.1975) (applying Florida law), and argues that the clauses cited by Mr. McPhee cannot create coverage that does not otherwise exist.

## II. DISCUSSION

In this diversity action the substantive law of the forum state, Florida, controls. *See, e.g., Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Keller v. Miami Herald Publ'g Co.*, 778 F.2d 711, 714 (11th Cir.1985) (citing *Erie Railroad v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). Because the parties devote so much of their arguments to the Former Fifth Circuit's decision in *Forman*, I will begin with that case.

### A. FORMAN

In *Forman*, a disability insurer sued its insured to rescind and cancel a policy. The insured, in turn, counterclaimed for specific performance (i.e., enforcement of the policy). Though he had been previously hospitalized for, and diagnosed with, diabetes, the insured had denied in his application that he had the illness. In November of 1969, the insurer issued a disability policy covering accidental bodily injury occurring during the term of the policy and sickness first manifesting itself during the term of the policy. The policy, as required by § 627.607, contained an incontestability/preexisting conditions clause that is materially identical to the one in § 10.2.b of Mr. McPhee's policies. 516 F.2d at 427–28.

In June of 1971, the insured filed a claim for total disability resulting from his diabetes. In May of 1972, the insurer learned of the insured's preexisting diabetes and sought to rescind and cancel the policy. The district court entered judgment for the insured, concluding that the effect of the incontestability/preexisting conditions clause was to bring the insured's diabetes within the policy even though it had manifested itself before the policy was issued. *Id.*

The Former Fifth Circuit, applying Florida law, *see id.* at n. 1, reversed on the ground that the diabetes, which had been excluded from inception by the policy's coverage provisions, did not come in the back door through the statutorily required incontestability/preexisting conditions clause. It first explained under the "great weight of authority ... an incontestable clause in a disability policy does not deprive the insurer from defending on the ground that the particular disability was never within the policy coverage." *Id.* at 428. Then, turning to the policy language required by § 627.607, it said:

> This statutory clause only prohibits denials of claims based on the prior existence of claims base don the prior existence of a disease. Such denials are irrelevant here because a disease is covered no matter when it existed, so long as it was not first manifested prior to the policy date. Thus [the clause] has no effective field of operation.

*Id.* at 429. *See also id.* at 430 n. 4 (holding that the statutorily-required incontestability/preexisting conditions clause was really a legislative expansion of coverage, and not an incontestability provision).

Two years later, in *Allen v. Aetna Life Insurance Co.*, 563 F.2d 1240 (5th Cir. 1977), the Former Fifth Circuit reaffirmed the rule set forth in *Forman*. Adopting an order entered by the district court, it concluded that under Florida law the statutorily-required incontestability/preexisting conditions clause did not create coverage that was excluded by other language in the

policy. It acknowledged that the effect of its holding was to render this incontestability/preexisting conditions clause a "nullity" with "no effective field of operation," but explained that "giving [the clause] some scope of operation would go beyond the language and would be contrary to the general principle that incontestable clauses do not operate to extend coverage beyond that contracted for." *Id.* at 1241, 1242. *See also Keaten v. Paul Revere Life Ins. Co.,* 648 F.2d 299, 303 n. 13 (5th Cir. Unit B 1981) (holding that Georgia would follow the majority rule announced in *Forman* ).

### B. THE PARTIES' POSITIONS

According to Paul Revere, *Forman* is a controlling and binding expression of Florida law. Because Mr. McPhee's disability stems from injuries sustained prior to the issuance of the policies, Paul Revere argues that the disability does not come within the scope of the policies' definition of "injury" or "sickness." Not surprisingly, Mr. McPhee disagrees. He asserts that *Forman* is no longer binding precedent in light of more recent Florida decisions.

 Absent a subsequent change in state law, a circuit panel decision interpreting that law should be followed. *See Broussard v. Southern Pacific Transp. Co.,* 665 F.2d 1387, 1389 (5th Cir.1982) (*en banc* ). If *Forman* in fact delineated the legal terrain for the parties to do battle, the issue for me would be a difficult one.

As Paul Revere points out, some Florida decisions have cited *Forman* with approval. *See, e.g., North Miami Gen. Hosp. v. Central Nat'l Life Ins. Co.,* 419 So.2d 800, 802 n. 3 (Fla. 3d DCA 1982). Furthermore, it appears that *Forman* remains the majority rule. *See, e.g., Paul Revere Life Ins. Co. v. Haas,* 644 A.2d 1098, 1103–04 (N.J.1994); *Jack v. Paul Revere Life Ins. Co.,* 97 Wash.App. 314, 982 P.2d 1228, 1230–35 (1999). On the other hand, subsequent Florida decisions interpreting the clause required by § 627.607 arguably conflict with *Forman,* and have failed to even discuss that opinion. *See, e.g., Lubin v. Provident Life & Accident Ins. Co.,* 681 So.2d 753, 753–54 (Fla. 3d DCA 1996). And, as Mr. McPhee correctly notes, the rule expressed in *Forman* is not uniformly followed. *See, e.g., Equitable Life Assurance Soc'y v. Bell,* 27 F.3d 1274, 1277–83 (7th Cir.1994); *Galanty v. Paul Revere Life Ins. Co.,* 23 Cal.4th 368, 97 Cal. Rptr.2d 67, 1 P.3d 658, 662–71 (2000).[3]

I do not believe that I need to enter the fray about the continued viability of *Forman* (and *Allen* ) under Florida law. Both of those cases interpreted (and addressed the effect of) policies containing only the incontestability/preexisting conditions clause required by § 627.607. Neither case involved policies like the ones here which contain an additional clause dealing with preexisting conditions. I therefore assume that *Forman* and *Allen* remain good law and binding precedent with respect to the policy language presented in those cases.

---

**3.** It is important not to overstate the importance of cases from other jurisdictions passing on whether *Forman* was correctly decided, as they arise in a variety of settings. Not only do the cases involve different types of policies with non-uniform language, there is the additional complication of the sometimes disparate state statutory schemes that govern. For a general overview of the various approaches courts have taken in these cases, see J. APPLEMAN, 1A INSURANCE LAW AND PRACTICE § 333 (1981 & 2000 Supp.); L. RUSS, COUCH ON INSURANCE 3d §§ 240:55–240:59 (2000); and Dale J. Gilsinger, Annotation, *Construction of Incontestable Clause Applicable to Disability Insurance,* 67 A.L.R.5th 513 § 5 (1999 & 2000 Supp.).

## C. The Language in Mr. McPhee's Policies

Mr. McPhee's policies, as noted earlier, include an additional preexisting conditions clause not required by Florida law. And unlike the language required by § 627.607, and interpreted in *Forman* and *Allen,* this additional clause does not contain the limiting phrase "not excluded by name or specific description before the date of loss." This omission is significant, because that limiting phrase was an important factor in the Former Fifth Circuit's interpretation of the clause required by § 627.607. *See Forman,* 516 F.2d at 429–30; *Allen,* 563 F.2d at 1241–42. *See also Keaten,* 648 F.2d at 304 (Roney, J., concurring) ("Without the application of the incontestability provision, [the] plaintiff has no case at all. By the policy's language, [the] plaintiff cannot receive benefits for a disabling sickness if the sickness has manifested itself before the policy was issued. The incontestability clause could in no way expand that coverage."). Without this limiting phrase, it is difficult, if not impossible, to incorporate the definitions of "injury" and "sickness" into the additional preexisting conditions clause. Because the additional preexisting conditions clause is materially different from the provision required by § 627.607, I cannot accept Paul Revere's argument that this additional clause is also necessarily controlled by *Forman* and *Allen. See North Miami Gen. Hosp.,* 419 So.2d at 802 n. 3 (explaining clauses at issue in *Forman* ).

Under Florida law, "every provision in a[n] [insurance policy] should be given meaning and effect and apparent inconsistencies reconciled if necessary." *Excelsior Ins. Co. v. Pomona Park & Package Store,* 369 So.2d 938, 941 (Fla. 1979). *Accord Dahl–Eimers v. Mutual of Omaha Life Ins. Co.,* 986 F.2d 1379, 1381 (11th Cir.1993) ("Under Florida law, courts must construe an insurance contract in its entirety, striving to give every provision meaning and effect.") (citation omitted). "An insurance contract is ambiguous if it is susceptible to two or more reasonable interpretations that can fairly be made. When one of these interpretations results in coverage and another results in exclusion, ambiguity exists in the insurance policy." *Dahl–Eimers,* 986 F.2d at 1381 (citations omitted).

Mr. McPhee's additional preexisting conditions clause provides that "during the first two years" Paul Revere "will not pay benefits for a preexisting condition if it was known but not disclosed [on] the application." Such language can only mean that benefits will be paid for known but undisclosed preexisting conditions after the first two years. This plain language interpretation, *see id.* at 1382, is buttressed by the italicized question on the left-hand side of the page opposite the clause. The question—"What if a disability results from a preexisting condition?"—would not have been posed by Paul Revere's drafters if there was absolutely no coverage for a disability resulting from a preexisting condition. This, of course, does not end the matter, because the definitions of "injury" (accidental bodily injury sustained after the date of issue) and "sickness" (disease which first manifests itself after the date of issue) in the policies indicate that a preexisting condition (a condition for which medical advice or treatment was recommended by or received from a physician prior to the date of issue) can never be the cause of a *covered* "injury" or "sickness." Thus, even without the incontestability/preexisting conditions clause required by § 627.607—which *Forman* and *Allen* hold do not provide cover-

age—I am faced with an ambiguity in the policies concerning coverage for a disability resulting from a preexisting condition. *See Dahl–Eimers*, 986 F.2d at 1381.

■ Florida law provides that insuring clauses are construed liberally to effect the most coverage possible, while exclusionary language is strictly construed. *See, e.g., Michigan Millers Mut. Ins. Corp. v. Benfield*, 140 F.3d 915, 925 (11th Cir.1998) (citations omitted); *Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So.2d 176, 179 (Fla. 4th DCA 1997) (citations omitted). To the extent that the policies are ambiguous, unclear, or can be read two ways, they must be read in favor of providing coverage to Mr. McPhee because Paul Revere drafted the policy language. *See, e.g., Benfield*, 140 F.3d at 925 (citations omitted); *Excelsior Ins.*, 369 So.2d at 942; *Hagen v. Aetna Cas. & Sur. Co.*, 675 So.2d 963, 965 (Fla. 5th DCA 1996) (citing *National Indem. Co. v. Corbo*, 248 So.2d 238, 240–41 (Fla. 3d DCA 1971)).

In *DiFranco v. National Found. Life Ins. Co.*, 551 So.2d 535 (Fla. 3d DCA 1989), the Third District confronted a situation very similar to this one. The health insurance policy in *DiFranco* contained not only the incontestability/preexisting conditions clause required by § 627.607, but also a separate preexisting conditions clause providing coverage after two years. *Id.* at 536. Because the policy defined "sickness" as an illness first manifesting itself thirty days after the effective date, the Third District concluded that the policy was ambiguous as to whether coverage was provided for an illness "which both preexists and manifests itself prior to the issuance of [the policy] when ... such [policy] has been in force for two years." *Id.* Based on this conclusion, the Third District ruled that the insurer's affirmative defenses de-

nying coverage "should have been stricken." *Id.* Consistent with *DiFranco*, later Florida decisions involving policies with both a § 627.607 incontestability/preexisting conditions clause and a separate preexisting conditions clause have held that once a policy is in effect for two years, there is coverage for losses caused by preexisting conditions. *See Green v. Life & Health of Am.*, 776 So.2d 949, 950–52 (Fla. 4th DCA 2000); *Kaufman v. Mutual of Omaha Ins. Co.*, 681 So.2d 747, 749–51 (Fla. 3d DCA 1996).

Mr. McPhee became disabled more than two years after Paul Revere issued the policies. Given cases like *DiFranco, Kaufman,* and *Green,* the additional preexisting conditions clause in the policies must be read to provide coverage for Mr. McPhee's disability even though that disability was the result of a preexisting condition—Mr. McPhee's 1993 accident. *See, e.g., Excelsior Ins.*, 369 So.2d at 942. Because Florida law does not require a disability insurer to include this additional clause in its policies, it is not unfair to interpret the clause in Mr. McPhee's policies against Paul Revere, the drafter. *Cf. Oglesby v. Penn Mut. Life Ins. Co.*, 889 F.Supp. 770, 779 (D.Del.1995) ("Penn Mutual took a calculated risk by ... opting for a more lenient, and thus more marketable version of the incontestability clause. Courts are not in the habit of relieving parties, especially sophisticated insurance companies, of their improvident decisions."), *aff'd,* 127 F.3d 1096 (3d Cir.1997).

Paul Revere's contention that the additional preexisting condition clause is governed by *Forman* because it is merely a "variation" of the incontestability/preexisting conditions clause required by § 627.607 is not persuasive, as it ignores the need to give effect to every provision in a policy. It would take an extension of *Forman* to nullify the effect of the addi-

**1382**

tional preexisting conditions clause, and such an extension is unwarranted in light of *DiFranco, Kaufman,* and *Green.*[4]

### III. CONCLUSION

My decision here is a narrow one. Although I do not question the interpretation of the incontestability/preexisting conditions clause required by § 627.607 in *Forman* and *Allen,* those decisions are not controlling. Unlike the policies at issue in *Forman* and *Allen,* Mr. McPhee's policies contain an additional preexisting conditions clause which does not incorporate the definitions of "injury" and "sickness" found in the policies' coverage provisions, and which therefore creates an ambiguity. Under settled Florida law, this ambiguity must be resolved in favor of Mr. McPhee, and he is therefore entitled to coverage for his disability even though it resulted from his 1993 accident.

A final judgment will be issued by separate order.

---

**4.** Because the additional preexisting conditions clause does not use the words "exist" or "manifest" to define a preexisting condition, it is unnecessary to tackle the questions presented by clauses with such language. *Compare, e.g., Forman,* 516 F.2d at 429–30, *with, e.g., Bell,* 27 F.3d at 1280–82.